ELIZABETH J. SNYDER v. GENERAL PAPER CORPORATION AND ANOTHER.

152 N. W. (2d) 743.

August 11, 1967—No. 40,230.

*Hansen & Hazen* and *Gene P. Bradt*, for relators.
*LeVander, Zimpfer & Tierney*, for respondent.

NELSON, JUSTICE.

Certiorari to review an order of the Industrial Commission allowing compensation to respondent for the death of her husband resulting from asphyxiation.

Decedent employee was a paper salesman for General Paper Corporation, a paper wholesaler located in Minneapolis. During his employment for 8 years preceding his death, he was assigned various accounts which he would attempt to persuade to make purchases from his employer's line of paper products. One of employee's accounts was the Sono-Press Company which was buying paper for record jackets from a competitor. On January 16, 1964, employee and one David Hersk, an officer of the Sono-Press Company, took a planned business trip, via Chicago, to visit the Simpson Lee Paper Company in Vicksburg, Michigan, to examine paper for record jackets which employee hoped to sell to Sono-Press. The record indicates that the arrangements for the trip were made by employee with employer's authority and knowledge. The expenses of transportation, meals, rooms, taxi fare, and reasonable entertainment were to be paid for by employer.

Employee and Mr. Hersk left Minneapolis, arrived in Chicago, and checked into the Sheraton-Chicago Hotel on the morning of January 16, 1964. They spent the day there in order to visit an album fabricator and permit employee to see exactly how the paper was to be used by Hersk so that the type of paper necessary could be determined. They spent most of the day doing this, also stopped for a short time at the Columbia Records Company, and returned to their hotel about 4 p. m. At approximately 7 p. m. they went to the Kon-Tiki Ports Restaurant in the hotel where they ordered drinks and their meal. As they were eating, employee cut off a piece of meat, which Hersk described as being larger than he himself would have cut. At almost the instant he had placed the meat in his mouth, employee slumped over. Hersk did not hear employee choking or coughing and did not know whether or not he had attempted to swallow the meat before he slumped over. Employee remained in his slumped-over condition at the table while various people tried to help him. He was taken to his room where he was subsequently pronounced dead from asphyxiation, a piece of meat having been caught in his larynx.

The Industrial Commission found that the death of employee was caused by choking to death on a piece of meat, the result of an injury arising out of and in the course of his employment.

■ Minn. St. 176.011, subd. 16, states:

." 'Personal injury' means injury arising out of and in the course of employment * * *."

Section 176.021, subd. 1, states:

"Except as excluded by this chapter all employers and employees are subject to the provisions of this chapter. Every such employer is liable for compensation according to the provisions of this chapter and is liable to pay compensation in every case of personal injury or death of his employee *arising out of and in the course of employment without regard to the question of negligence * * *.*" (Italics supplied.)

In Nelson v. City of St. Paul, 249 Minn. 53, 81 N. W. (2d) 272, this court held that, if the injury has its origin with a hazard or risk connected with the employment and flows therefrom as a natural incident

of the exposure occasioned by the nature of the work, the requisite causal connection exists and the injury arises out of the employment. This court further made it clear in the Nelson case that the phrase "in the course of" the employment refers to factors of time and place and means that an injury to be compensable must arise within the time and space boundaries of the employment.

In the more recent case of Lange v. Minneapolis-St. Paul Metropolitan Airports Comm. 257 Minn. 54, 56, 99 N. W. (2d) 915, 917, the court again discussed the foregoing terms and held that the term "arising out of" as used in the Workmen's Compensation Act refers to the causal connection between the employment and the injury, whereas the term "in the course of" refers to the time, place, and circumstances of the accident causing the injury. Thus, it is held in this state that an injury arises out of the employment if it arises out of the nature, conditions, obligations, or incidents of the employment; in other words, out of the employment looked at in any of its aspects. Breimhorst v. Beckman, 227 Minn. 409, 35 N. W. (2d) 719; Olson v. Trinity Lodge, 226 Minn. 141, 32 N. W. (2d) 255. In the Olson case, this court said (226 Minn. 144, 32 N. W. [2d] 257):

"The phrase 'arising out of' the employment expresses the factor of origin, source, or contribution rather than cause in the sense of being proximate or direct. Compensation acts are *sui generis,* and care must be taken not to defeat their purpose by applying, through long judicial habit, concepts belonging to fundamentally different fields of litigation."

The referee stated that the instant case is governed by the decisions in traveling salesmen cases. 1 Larson, Workmen's Compensation Law, § 25, summarizes these:

"Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, *except when a distinct departure on a personal errand is shown.* Thus, injuries arising out of the necessity of sleeping in hotels, or eating in restaurants away from home are usually held compensable." (Italics supplied.)

In Kaletha v. Hall Merc. Co. 157 Minn. 290, 196 N. W. 261, the

employee was working as a Santa Claus. While taking a "break" he lighted a cigarette and his false beard caught fire, causing serious injury. This court in allowing recovery said (157 Minn. 294, 196 N. W. 262):

"The procuring of food or other refreshments by an employe, although personal in character, is considered so far incidental to the employe's work, that injuries received while procuring such food and refreshments may be found to arise out of and in the course of the employment; provided the employe acts in a reasonable and prudent manner, and the injuries occur while he is upon the employer's premises or is subject, as an employe, to the employer's control."

We have held that if a salesman meets with accidental injury or death while entertaining a customer of his employer, such injury or death is presumed to be within the course of his employment and to arise therefrom. Ohlsen v. J. G. Dill Co. 222 Minn. 10, 23 N. W. (2d) 15. In that case the employee was drowned while on a fishing trip with a customer. In holding his death was compensable, this court stated (222 Minn. 15, 23 N. W. [2d] 18):

"We have further held that, where an employe is specifically instructed and encouraged to entertain customers and prospective customers as a means of developing good will and increasing the business of his employer, accidents sustained while in the course of such activities are within and covered by the compensation act."

Under such circumstances courts look to the facts that the employer pays for the entertainment of customers and that the policy of the employer is to create good will and to promote his business by such entertainment. Thus, the court went on to say in the Ohlsen case (222 Minn. 16, 23 N. W. [2d] 19):

"There is further evidence that, to reimburse decedent for the sums paid out for such entertainment purposes, the employer paid him an additional sum of $25 per month. That this policy was justified, if that be material here, is borne out by the fact that decedent's activities in pursuing it substantially increased the business of his employer. It is well known that many large corporations have adopted similar methods

of producing business and have appropriated large sums and often employed men with no other duties to perform than the entertainment of customers and prospective customers for the promotion of business. It is a well-recognized American business practice; and, if an employee while so engaged meets with accidental injury or death, such injury or death is presumed to be within the course of his employment and to arise therefrom, and, in consequence, is covered by the compensation act."

In this case it has been established that it was employer's policy to promote business through the entertainment of customers; that employee had been given authority by employer both to arrange this trip for the purpose of allowing the customer to observe the manufacture of paper suitable for the manufacture of record jackets and to make reasonable expenditures for the entertainment of the customer while on the trip, and that the company was to pay all of the expenses of the trip, including the entertainment.

In Ohlsen v. J. G. Dill Co. *supra,* Ohlsen was performing a service of creating good will for his employer at the time that the boat in which he was a passenger capsized and he was drowned. Similarly, in the present case, employee was performing a service for his employer by creating good will for his employer, all for the purpose of making a substantial sale to the customer, when he suddenly died as a result of the accident which occurred during their dinner. Certainly in both cases the death had its origin in a hazard and risk connected with the employment.

In Stansberry v. Monitor Stove Co. 150 Minn. 1, 183 N. W. 977, 20 A. L. R. 316, a salesman was killed while trying to escape a hotel fire. The employer had given the salesman a territory mainly in North Dakota. While he was in Grand Forks, in connection with an itinerary which he had set up for calls as a salesman for the employer, the hotel in which he was staying caught fire and he was killed. This court said that the employee died from an accident which arose out of and in the course of his employment.

In Fisher v. Fisher, 226 Minn. 171, 32 N. W. (2d) 424, a salesman went to a public park where his customer was umpiring a baseball game. While waiting for the game to be completed so that he might be able to

talk to the customer, the salesman was hit in the eye by a thrown bottle, resulting in loss of his eye. This court held that the injury arose out of his employment and said in effect that the words "out of" meant that the employment must be a contributing source of the injury. Similar cases have arisen in other jurisdictions where the courts have held that a salesman is within the coverage of the workmen's compensation laws if he is asphyxiated while sleeping in a motel in the course of his employment. See, California Cas. Ind. Exch. v. Industrial Acc. Comm. 5 Cal. (2d) 185, 53 P. (2d) 758; Texas Employers Ins. Assn. v. Cobb (Tex. Civ. App.) 118 S. W. (2d) 375.

The record is clear in the instant case that it was employer's policy to allow its traveling salesmen to work their own hours, choose their own accommodations, and make their own decisions as to entertainment and eating. Employer and its insurer concede that employee was "in the course of his employment" at the time of his death, but contend that his death was not caused by an injury arising out of the employment, as required by Minn. St. 176.011, subd. 16, and 176.021, subd. 1. Relators attempt to distinguish the facts here from other compensation cases by saying that the risk of choking was one to which employee would be subjected in the ordinary course of life. They insist that in order to find injury arising out of the employment it is necessary to find that there was a hazard or a risk to which employee was exposed apart from that to which he would be exposed as a member of the general public.

Relators argue that if an employee is required in the course of his employment to lift objects, he is subjected to the risks of a possible back injury or hernia. If he is required to work out of doors in winter weather, he is exposed to the risk of frostbite or freezing to death. If he is forced to perform heavy or demanding work, he is subject to the risk of a coronary occlusion. If he is required to drive from town to town, he is subject to an automobile accident. If an employee is required to work in a plant where there is a heavy concentration of silica dust, he is exposed to the risk of developing silicosis. If an employee is required by his employer to go hunting or fishing with a customer, he is exposed to the risk of being shot or drowning. Relators go on to say:

"* * * But if, because of his employment, he is required to eat a well-prepared meal of fine food in a reputable restaurant, where is the risk or the hazard to which he is subjected? And if it is argued that he is subjected to a risk—that of choking—is that risk any different from the risk to which he would be subjected in the ordinary course of his life?"

However, looking at the coin from the other side, if it is true that in the course of ordinary life a person faces the risk of choking while eating, he also faces the risk of back injury or hernia while lifting, the risk of frostbite while out in the cold, the risk of coronary occlusion while performing heavy or demanding work, or the risk of an automobile accident while driving. The fact that an activity is performed both as a part of the employment and not as a part of it does not make injuries or death resulting from that activity noncompensable.

Workmen's compensation cases in this state indicate that an injury arises out of the employment if, after the event, it can be seen that the injury has its source in circumstances in which the employee's employment placed him. For example, in Krause v. Swartwood, 174 Minn. 147, 218 N. W. 555, 57 A. L. R. 611, an office assistant to a doctor ate her lunch near the office in order to more readily answer telephone calls for the doctor. She was injured from drinking poisoned coffee with her lunch. This court held that the injury arose out of the employment because the doctor's directions and her very proper acquiescence continued her employment through the noon hour and projected it into the restaurant where she lunched, just as the employment of a traveling salesman may be continued through the night and into the hotel where he sleeps, citing Stansberry v. Monitor Stove Co. *supra.*

In Kaselnak v. Fruit Dispatch, 205 Minn. 198, 285 N. W. 482, this court held that the causative danger must be incidental to the character of the business and not independent of the relationship of master and servant, but further stated, quoting from McNicol's Case, 215 Mass. 497, 499, 102 N. E. 697, L. R. A. 1916A, 306 (205 Minn. 201, 285 N. W. 483):

"* * * It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the

employment, and to have flowed from that source as a rational consequence." (Italics omitted.)

The case before us is hardly distinguishable from Krause v. Swartwood, *supra,* because it involves an injury due to choking rather than to food poisoning. If we follow the holding in the Krause case, had employee in this case eaten poisoned meat while entertaining Hersk at dinner, his death would be compensable. If we follow the contention of employer and its insurer, employee's death from choking on a piece of meat while entertaining Hersk at dinner is not compensable. But in both Krause and this case the circumstances surrounding the employees are the result of their employment; in both situations the event causing injury had its origin in circumstances created by the employer for the purpose of furthering the employer's business, and the death or injury flowed as a natural consequence therefrom. Whether employee may have been negligent in his manner of eating is immaterial since contributory negligence does not relieve an employer from liability under the Workmen's Compensation Act.

In McKenzie v. Railway Exp. Agency, Inc. 205 Minn. 231, 285 N. W. 529, an employee of the agency went into a railroad car, but not one in which he was working, for the purpose of protecting himself from the cold and was injured. The court in holding that his injury arose out of his employment, said (205 Minn. 233, 285 N. W. 530):

"* * * Acts of the employe necessary for his comfort and convenience, though strictly personal to himself, are incidental to the service, and injuries sustained while performing them are compensable."

The Industrial Commission in its decision in this case makes the following statement:

"The leading contemporary writers, Larson,[1] and Schneider,[2] infer compensability for most events occurring to traveling salesmen. Schneider quotes with approval Judge Wyatt in the 'slip and fall' case of a salesman going to eat. Thornton v. Hartford Accident & Indemnity Co., 198 Ga. 786, 32 S. E. 2d 816 (1945):

---

[1] 1 Larson, Workmen's Compensation Law, § 25.10.

[2] 7 Schneider, Workmen's Compensation (Perm. ed.) § 1635(d).

" '* * * the eating of meals, while a pleasure indulged in by a traveling salesman and all mankind, is as necessary to the continuance of his duties as the breath of life, and where his duties take him away from his home, his acts of ministration to himself should not—and we believe do not—take him outside the scope of his employment, so long as he performs these acts in a normal and prudent manner. Such activities, the performance of which are necessary to his health and comfort, while in a sense personal to himself, are nevertheless incidents of his employment and acts of service therein. Within the meaning of the workmen's compensation act, although only remotely and indirectly conducive to the object of employment.' "

In this case employee was eating his meal with a customer as part of a trip designed to procure business for employer, the expenses being paid by employer under arrangements between employer and employee. This was not just an ordinary meal, but a meal ordered in an exceptionally fine restaurant, served with drinks, and was part of the plan to win the customer's favor and to obtain business for employer from him. While there are no cases identical with the situation here, by parity of reasoning compensation should be allowed in the instant case. Some jurisdictions have upheld compensation awards in situations which may be considered extreme—e. g., where a salesman got a hair brush bristle in his eye when the train he was on jolted (Lief v. A. Walzer & Son, 248 App. Div. 651, 287 N. Y. S. 991). The trend, however, seems to be to adopt the doctrine of continuation of a traveling salesman-employee status throughout an employee's trip wherein his acts of traveling, procuring food, and procuring shelter are all incident of the employment relationship. We think this is a case where the employment was the sole factor in exposing employee to the injury-producing act. It was clearly the reason for his being in the Chicago restaurant at that time. The question is simply whether the employment is the predominant factor in exposing an employee, in a different manner and to a greater degree than if he had been pursuing his ordinary personal affairs, to a hazard which may or may not be peculiar to or exclusively associated with the employment, and which hazard, though part of the general working environment, may be in direct consequence of an injury-

producing act or event produced wholly within or without the orbit of work done for the employer by the employee or others. See, Breimhorst v. Beckman, 227 Minn. 409, 421, 35 N. W. (2d) 719, 728, and cases cited under note 6, 227 Minn. 422, note 5, 35 N. W. (2d) 728.

Consequently, as long as the necessity for a trip was created, as here, by employee's employment, such employment was a contributing cause and one leading to his death. Therefore, his death is compensable under the Minnesota act and Minnesota decisions. The record is clear that everything that employee was doing at the time of his death was intimately related to his employment. The evidence indicates that the dinner conversation included a summary of the day's activities at the companies visited in Chicago, as well as the discussion of the trip to the paper mill in Michigan planned for the next day. Employee was at all times doing what his employer ordered him to do, expected him to do, and knew he was doing, since it authorized the trip and was to underwrite the expenses thereof. The record indicates that employee did not deviate from his employer's business but rather that he was furthering the interest of his employer and his employment at the time of his death.

We said in Moore v. J. A. McNulty Co. 171 Minn. 75, 79, 213 N. W. 546, 548:

"At the outset it is proper to remind ourselves that the workmen's compensation act is highly remedial and should not be construed so as to exclude an employe from the benefits thereof unless it clearly appears that he does not come within the protection of the act."

In the early workmen's compensation case of State ex rel. Duluth Brewing & Malting Co. v. District Court, 129 Minn. 176, 179, 151 N. W. 912, 914, Mr. Justice Holt, speaking for this court, said:

"We shall not attempt to formulate a definition of the phrase, accidental injury arising out of the employment, except to say that the accident causing the injury must arise out of work or business being done for the master either by direct or implied authority. * * * The term cannot be restricted to injuries caused from anticipated risks of the service, if the law is to be of the benefit intended."

Relators advance the cases of Bronson v. Joyner's Silver & Electro-

plating, Inc. 268 Minn. 1, 127 N. W. (2d) 678, and Schwartz v. Industrial Comm. 379 Ill. 139, 39 N. E. (2d) 980, as controlling. We are unable to agree with that view. In Bronson the employee was killed when the car in which he and three other employees were riding was struck by a train as they were on their way to a restaurant during a half-hour lunch break. The employees were allowed to eat on the premises, but they were also given leave to eat elsewhere. In denying compensation the case followed a long line of Minnesota cases which hold that accidental injuries sustained by an employee while absent from his place of employment for a purpose not connected with such employment—for example, his lunch, or while going to and from work—are not covered by the Workmen's Compensation Act. That case is easily distinguished from the present one: Bronson was not a salesman at the time the injury occurred and was not engaged in an employment-connected activity at the time of the injury, while in the present case employee was eating in the hotel which was the very place to which his employment had taken him at the time his death occurred and his actions at that time were dictated by an employment-connected purpose. Schwartz v. Industrial Comm. *supra*, is also a case in which an employee was injured while he was eating a meal away from the employer's premises and was not engaged in an employment-connected activity.

In Reardon v. City of Austin, 174 Minn. 359, 361, 219 N. W. 292, 293, Mr. Justice Dibell, in affirming an order of the Industrial Commission, said:

"The commission finds the facts. We would have found differently. We appreciate however that others might take a different view, as the members of the commission did. * * * We cannot say that the commission could not reach the conclusion it did from a fair consideration of the evidence."

We have made it clear in former decisions that this court is not the trier of facts in workmen's compensation cases. Our function is to ascertain whether the findings are supported by inferences drawn from the facts, and findings so supported will not be disturbed unless they are manifestly contrary to the evidence. Thus, in Anderson v. Armour & Co. 257 Minn. 281, 287, 101 N. W. (2d) 435, 439, we stated:

"* * * [I]t is the policy of this court, in reviewing the findings of the Industrial Commission, not to determine whether on the facts the decision of the commission is correct or even preferable to another, but, rather, only to determine whether the findings have sufficient basis of inference reasonably to be drawn from the facts."

Mr. Justice Kenison, speaking for the New Hampshire court in Newell v. Moreau, 94 N. H. 439, 446, 55 A. (2d) 476, 481, said:

"We must constantly remember that in this case we are construing a compensation statute. 'Since the employer may be in no way to blame or have anything to do with the injury, the liability to compensate for it is in no usual sense tortious in character.' Holland v. Company, 83 N. H. 482, 484. We should not insert the conception of contributory fault which the compensation statute discarded and which is not a bar under section 10. * * * We prefer a liberal construction of the statute consistent with its history and general policy rather than a strict and literal interpretation based on the tort law of master and servant."

See, Cunning v. City of Hopkins, 258 Minn. 306, 103 N. W. (2d) 876.

It is our view that the unquestioned facts demonstrate that employee at the time of the accidental injury was traveling and engaged in pursuance of his employment and suffered a fatal injury in an activity incidental to such employment. The Industrial Commission properly found that his death arose out of and in the course of his employment.

Respondent is allowed $250 attorney's fees and costs in this court.

The decision of the Industrial Commission is affirmed.

Rogosheske, Justice (concurring specially).

I concur in the result. There is evidentiary support for an inference that the employee was exposed to a different and greater risk than if he had been pursuing his ordinary personal affairs. Here the environment of the occasion—the stress of persuading a prospective customer, to please him, and to make him more receptive—is a different circumstance than the ordinary leisurely consumption of an evening meal. The employee was discussing business at the time he choked. It was a late dinner commencing at 7:30 and the order had not yet been obtained.

While it may be that such choking occurs from bad eating habits, it is not unreasonable for a factfinder to conclude that the stress and tension of making a sale caused the employee to lapse into the type of careless eating habits which caused his choking.

KNUTSON, CHIEF JUSTICE (dissenting).

I cannot agree with this opinion. While negligence and contributory negligence are not important in determining compensability of injury or death under the Workmen's Compensation Act, causal relationship is.

I fail to see that there is any causal relationship between choking on a piece of steak and the employment of decedent, even though he was eating while he was on the job. A case might arise where an employee had limited time in which to eat and as a result would eat so fast that he would choke to death, but nothing of that kind appears in this case. The employee here simply took a chunk of meat that was too big and attempted to swallow it without chewing, and choked. I do not see that this had any relationship to his employment.

Nor do I agree with the concurring opinion. There is no evidence in this case that deceased was eating under any stress of persuading a prospective customer or trying to make him more receptive. He was simply eating his dinner. The same thing could have happened to him while eating at home.

OTIS, JUSTICE (dissenting).

I cannot agree that every injury which occurs "in the course of employment" necessarily "arises out of" such employment, as the foregoing opinion appears to hold.

The syllabus states:

"Where an employee is specifically instructed and encouraged to entertain customers and prospective customers as a means of developing good will and increasing the business of his employer, *accidents sustained while in the course of such activities are within and covered by the Workmen's Compensation Act.*" (Italics supplied.)

The opinion further holds:

"Consequently, as long as the necessity for a trip was created, as here,

by employee's employment, such employment was a contributing cause and one leading to his death. Therefore, his death is compensable under the Minnesota act and Minnesota decisions."

It concludes with the following rule:

"It is our view that the unquestioned facts demonstrate that employee at the time of the accidental injury *was traveling and engaged in pursuance of his employment* and suffered a fatal injury in an activity incidental to such employment. The Industrial Commission properly found that his death *arose out of and in the course of his employment.*" (Italics supplied.)

As I construe the opinion, we have now read out of Minn. St. 176.011, subd. 16, the provision that an injury not only must occur while the employee is furthering his employer's business but it must also be an injury which results from a condition caused by such employment. Here it is conceded that the decedent died while in the course of his employment. Nevertheless, the conditions of his employment had no bearing on the fact he choked to death. His injury resulted entirely from an unintentional but self-inflicted mishap. There is no evidence whatever that the choking was induced by any business activity.

The purpose of the compensation act is to recognize and rectify illness and accidents which result from an unusual exposure to occupational hazards not encountered to the same extent by persons not so employed. It is not intended to insure an employee against injuries resulting from risks which are neither created nor aggravated by his occupational activities.

In every case cited by the foregoing opinion, the Industrial Commission, and the employee, the injury or death resulted from a hazard which was caused or greatly increased because of the employee's work-related duties.

In Stansberry v. Monitor Stove Co. 150 Minn. 1, 183 N. W. 977, 20 A. L. R. 316, the employee was killed in a hotel fire, a risk not of his own making and one to which he would not have been exposed except for his work. In Kaletha v. Hall Merc. Co. 157 Minn. 290, 196 N. W.

261, the risk was an extraordinary one created by the necessity for wearing an inflammable beard. In Krause v. Swartwood, 174 Minn. 147, 218 N. W. 555, 57 A. L. R. 611, the poisoned food resulted from conditions thrust on the employee over which she had no control. The hazard was one imposed on her. She did not create it herself. The same may be said of Ohlsen v. J. G. Dill Co. 222 Minn. 10, 23 N. W. (2d) 15, and Fisher v. Fisher, 226 Minn. 171, 32 N. W. (2d) 424. They involved injuries where, in the one case, the risk was greatly increased because of the hazards inherent in hunting or fishing, and, in the other, a thrown object over which the employee had no control struck him at an athletic event.

It has heretofore been the law that an injury incurred by an employee will be compensated only "if the employment, as a part of the working environment, peculiarly exposes the employee to an external hazard whereby he is subjected to a different and a greater risk than if he had been pursuing his ordinary personal affairs. In other words, if the injury has its origin with a hazard or risk connected with the employment, and flows therefrom as a natural incident of the exposure occasioned by the nature of the work, it arises out of the employment." Nelson v. City of St. Paul, 249 Minn. 53, 56, 81 N. W. (2d) 272, 275.

In my opinion choking on a piece of meat because it is cut too large and swallowed too fast is not the result of a "peculiar exposure" to an "external hazard" which subjects an employee to a different or greater risk than he experiences wherever or whenever he is engaged in the process of eating a meal. I would therefore reverse.

PETERSON, JUSTICE (dissenting).

I join the Chief Justice and Mr. Justice Otis in their dissenting opinions, to which I would append an additional observation.

It would seem that the Industrial Commission was influenced more by a feeling that the result was dictated by two prior decisions of this court than by its own judgment as to the rightness of the result. Commissioner James Pomush, writing the main opinion, relied almost exclusively upon this court's decisions in Kaletha v. Hall Merc. Co. 157 Minn. 290, 196 N. W. 261, and Krause v. Swartwood, 174 Minn. 147,

218 N. W. 555, 57 A. L. R. 611, but at the same time recognized that this case "points up a troublesome and rather undecided area of the law."[1] The concurring comment of Commissioner A. E. Ramberg pointedly acknowledged that his judgment was based upon "the almost inevitable conclusion that the legal trend [is] to find compensable any injury occurring during any reasonable act occurring while in an assigned territory" even though it is his expressed judgment "that noth-

---

[1] "The case points up a troublesome and rather undecided area of the law. The referee in supporting his holding, cited the case of Kaletha v. Hall Mercantile Co., 157 Minn. 290, 196 N. W. 261, 2 Minn. W.C.D. 100. Kaletha was working during the Christmas period as a Santa Claus at a department store. He was dressed in the traditional Santa Claus suit. While taking a break from his Santa stint, he went into a room in the rear part of the store and undertook to light a cigarette. His false bearded face caught fire and he suffered serious burns. *The Commission denied him compensation.* The Supreme Court reversed the Commission and awarded compensation.

"In Krause v. E. A. Swartwood, et al., 174 Minn. 147, 218 N. W. 55, 5 Minn. W.C.D. 83, the employe was a secretary to Dr. Swartwood. He asked her to lunch in a nearby restaurant instead of going home to lunch, as she usually did. He wanted her to get his phone calls during this period and she had his calls transferred to the cafe. The price of the lunch was advanced by the doctor. Coffee at the cafe was served in a new urn, and she became poisoned by some white substance in her cup of coffee. *The Commission denied compensation.* The Supreme Court reversed the Commission and awarded compensation.

"The leading contemporary writers, Larson, and Schneider, infer compensability for most events occurring to traveling salesmen.

\* \* \* \* \*

"In the instant case the employe did not get poisoned by his food, nor burn himself with a cigarette and flammable beard. He cut his meat in too large a piece. *There certainly is some difference.* And we recognize that factor — but the stating of the difference in a legal differentiating theory is not easily done — if at all. And in view of the past decisions, the remediality of the act, and liberality of the law in regard to salesmen, we place the employe's choking on his piece of meat in the same relationship to his employment as the events in the Kaletha and Krause cases, supra." (Italics supplied.)

ing in the employment was the proximate cause of the salesman's death."[2]

It is my view that neither Kaletha nor Krause control decision in this case. Although the cases have some similarity, they are not the same. Commissioner Pomush recognizes that "[t]here certainly is some difference" between this case and those, and the majority, although writing that Krause is "hardly distinguishable," does acknowledge that there are no other cases which are "identical." Kaletha is so distinguishable on its facts as hardly to require comment,[3] and it is noted that the employee himself does not cite it as a controlling case.[4]

The Krause case, too, can be reconciled on its own facts, admitted in that decision to be unusual. Although Commissioner Pomush wrote that "the stating of the difference in a legal differentiating theory is not easily done," it is important to do so. If we do not do so, we either write out of the statute the essential factor that an accident must "arise out of" the employment or we set traveling salesmen apart for vastly more favorable treatment than is accorded other employees. This manifestly was not the legislature's intent. In this case the employee, while taking his food and drink at a restaurant of his choice, exposed himself to no unusual hazard and suffered an injury which, in the words of Commis-

---

[2] "A careful reading of traveling men cases leads to the almost inevitable conclusion that the legal trend [is] to find compensable any injury occurring during any reasonable act occurring while in an assigned territory. One reaches this conclusion even though it would appear under the facts of this case, that nothing in the employment was the proximate cause of the salesman's death, but rather that it most likely was the result of a life-long eating habit."

[3] See footnote 1.

[4] The only difficulty with Kaletha is the unnecessary verbiage which blurred the important distinction between accidents occurring "in the course of," as distinguished from "arising out of," the employment and its unrestricted dictum equating the procurement of food and refreshment with the simple act of smoking during duty hours. 157 Minn. 294, 196 N. W. 262. If the dictum is at all applicable we must take with it its proviso that the act must be done "in a reasonable and prudent manner," which would rule out its application to decedent's act of drinking three martinis and cutting off an oversized piece of meat to ingest.

sioner Ramberg, "most likely was the result of a life-long eating habit," that habit, rather than his employment, being the proximate cause of his unfortunate death. In Krause the employee, in sharp contrast, was expressly ordered to go to a certain restaurant to take lunch rather than going home, for the sole convenience of her employer so that she might receive calls from expectant mothers transferred there from the doctor's office during his absence. The risk she incurred resulted solely from obeying the order of her employer rather than from any act of her own. The court recognized that "[h]er luncheon that day was taken under unusual circumstances at the direction of her employer" and decided that it "arose from a 'risk connected with the employment'" because "[h]er injury was a consequence of that very thing." 174 Minn. 149, 150, 218 N. W. 556. The result in Krause, unlike the instant case, can be justified on grounds of peculiar exposure to external hazard different and greater than the risk to which she would have been exposed had she been pursuing her ordinary personal affairs.[5]

---

[5] See, Nelson v. City of St. Paul, 249 Minn. 53, 55, 81 N. W. (2d) 272, 275 (school teacher injured by ball batted by school children at play on school premises). The exposure in Nelson and Krause was peculiarly due to the place of employment. The exposure in Kaletha was due to the peculiar garment required of the employee. Neither condition fits the situation of the employee in the instant case.