## LOUIS CAOUETTE v. LEEF BROTHERS, INC., AND ANOTHER.

158 N. W. (2d) 593.

April 26, 1968—No. 40,969.

*John R. Parker,* for relator.
*Tyrrell, Jardine, Logan & O'Brien,* for respondents.

Heard before Knutson, C. J., and Murphy, Rogosheske, Sheran, and Peterson, JJ.

PETERSON, JUSTICE.

Certiorari to review a decision of the Industrial Commission which reversed the finding of its referee that relator-employee was permanently

and totally disabled and awarded him compensation only for temporary total and permanent partial disability.

Employee, a laundry truckdriver, injured his back on August 30, 1955, when he helped a fellow laundry truckdriver lift a heavy laundry basket into a truck. He was not immediately disabled and, except for three or four visits to a chiropractor, continued at his job until he underwent surgery for a protruding intervertebral disc on July 26, 1958. The surgery was without unusual event, and he was discharged from the hospital on August 7, 1958. He has not worked since and began drawing social security in 1959, about 6 months after he quit working. On July 21, 1961, the employee entered into a stipulation for settlement of his claim by payment of benefits for 47½-percent permanent partial disability of the back; but on November 22, 1965, in response to the employee's petition, the commission vacated the stipulated award, and the employee filed his present claim for permanent total disability.

The question now presented is fundamentally one of fact and, according to settled principles of law, is only a question of whether the evidence and the inferences reasonably to be drawn therefrom support the commission's finding that employee is not permanently and totally disabled by reason of his industrial accident on August 30, 1955.[1] The determinative evidence consists of the findings and opinions of medical experts which, when we view the evidence and resolve any conflicts most favorably to the findings, amply support them.

Dr. Keith Millett, employee's attending doctor, performed the surgery in 1958 and periodically examined employee up to March 1961, shortly prior to the original settlement award. At that time he rated employee's disability as 20 percent of the back and rendered the opinion that employee had then reached maximum improvement and that his condition was stable. Dr. Millett thereafter continued to observe and examine employee up to March 1966, and at that time he found that employee's symptoms from the disc injury and surgery had remained much the same

---

[1] Stephen v. Miles Const. Co. 240 Minn. 307, 60 N. W. (2d) 801; Hommerding v. Clarence Landwehr Heavy Moving, 273 Minn. 40, 139 N. W. (2d) 482; Snyder v. General Paper Corp. 277 Minn. 376, 152 N. W. (2d) 743.

but that he had become progressively debilitated, weaker, and stooped over, with flabby, disintegrating muscles. Although employee accordingly had difficulty in getting around, Dr. Millett attributed this to employee's inactivity and the resulting progressive weakness of muscles and general muscle tone.

Employee was 57 years of age at the time of the injury and 67 years of age at the time of the hearings in 1966. According to his own testimony he had done little work since 1961 and, aside from some light household chores, rested a great deal, much of the time in bed. He spent his summers at a lake cottage at Nisswa, Minnesota, driving his own automobile to and from the cottage. While there, he spent much of his time relaxing in a lounge chair and fishing off his patio. Dr. Millett added his subjective analysis: "I didn't feel he wanted to go back to work very badly; if he had wanted to, he could have done more than he was doing."

Dr. Frank Babb, an orthopedist, examined employee on March 22, 1966. Examining X rays of employee's spine taken on that date, Dr. Babb said he found rather advanced degeneration of the discs and joints of the lower lumbar spine and advanced calcification in the lower part of the aorta and iliac vessels due to degeneration (to which latter condition he attributed employee's complaints of low back pain), accompanied by diminution in urinary activity. Dr. Babb testified:

"It is my opinion that Mr. Caouette's present disability is attributable to a combination of things. Chiefly, first, a premature and advancing aging and degeneration of the weight bearing joints in the lower lumbar spine, the intervertebral disc or discs, and a vascular insufficiency due to advanced calcification of the abdominal aorta and the common iliac artery. Secondly, I believe that his disability is due in part, assuming the history to be correct, to his on the job injury of August 30, 1955, which in my opinion constituted an aggravation of his preexisting condition and required only conservative management for a period of three years following its occurrence.

\* \* \* \* \*

"It is my opinion, again assuming the facts previously stated, that

the accident in question cannot be held responsible for more than fifteen or at the most twenty per cent disability of his back.

\* \* \* \* \*

"I attribute the remaining disability to the premature and unusually advanced degenerative process which has neither been triggered, aggravated, or exacerbated by the injury in question."

Dr. Meyer Z. Goldner, who testified for employee, had first examined him on April 7, 1961, and found that he had pain in his back and left leg. Dr. Goldner at that time rated the permanent disability of relator's back as between 40 and 50 percent and considered him totally disabled for anything except very light work. Dr. Goldner examined employee again in January 1966 and at that time concluded that employee was permanently and totally disabled from partaking in any sustained occupation, a disability which he related to the accident of August 30, 1955. Dr. Goldner did not dispute that calcification of employee's abdominal aorta could result in pain in the back and legs, but he felt that an aortogram would be necessary to determine whether employee in fact had any insufficiency in the aorta. The commission could, of course, choose to rely upon the findings and opinions of the other two doctors instead.

Employee presented, in addition, the opinion testimony of a Robert Flanary, who was an older-worker specialist for the Minnesota State Employment Service. Flanary interviewed employee in January 1963 and February 1966 and learned from those interviews about his back and leg pains and his inability to walk more than a short distance or stand in one position for more than a few minutes without the occurrence of pain. Flanary testified that there was no work that employee could perform in the labor market, either now or in the foreseeable future. He was, of course, in no position to establish the causal relationship between employee's permanent inability to work and the original industrial injury, which is the crux of the matter.[2]

Affirmed.

---

[2] Relator's reliance on Lee v. Minneapolis St. Ry. Co. 230 Minn. 315, 41 N. W. (2d) 433, and Berg v. Sadler, 235 Minn. 214, 50 N. W. (2d) 266, is accordingly misplaced.