Bartlett v. Duke University

(MRS.) EVELYN BARTLETT, WIDOW OF ROBERT B. BARTLETT, DECEASED EMPLOYEE-PLAINTIFF v. DUKE UNIVERSITY, EMPLOYER AND GLENS FALLS INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 7314IC112

(Filed 28 March 1973)

1. Master and Servant § 60— workmen's compensation — travel away from employer's premises — acts within course of employment

An employee whose work entails travel away from the employer's premises is within the course of his employment, continuously during the trip, except when distinct departure on a personal errand is shown.

2. Master and Servant §§ 56, 60— workmen's compensation — choking to death in restaurant — accident arising out of and in course of employment

Where an employee of Duke University went to Washington, D. C., to interview prospective employees for his department, the employee traveled a distance of 17.3 miles from the office where he was to conduct the interviews to the home of a personal friend and 15.3 miles from there with the friend to a restaurant, and the employee died from choking on a piece of meat in the restaurant, it was held (1) that the employee's death arose "in the course of" his employment since at the time of the accident he was engaged in a necessary act incidental to his trip for the employer, and (2) that his death arose "out of" his employment since the accidental choking resulted from a risk involved in the act of eating.

Judge CAMPBELL dissenting.

APPEAL by defendant from opinion and award of the North Carolina Industrial Commission, filed 24 August 1972.

This is a proceeding under the Workmen's Compensation Act to recover compensation for the death of Robert B. Bartlett who died from choking on a piece of meat in a restaurant near Washington, D. C.

Bartlett, a retired navy commander, was employed by Duke University as the Construction Administrator in the Department of Physical Planning and University Architecture. On 12 March 1970 he was in the Washington, D. C. area to interview several retiring military personnel as prospective employees of his department. He arrived at a naval office near the Pentagon area at about 1:00 p.m. on that date and made arrangements to interview two individuals there on the following morning. Bartlett left that office at approximately 3:30 p.m. At approximately 5:00 p.m. on that date, he arrived at the home of Mrs.

Arline M. Rigoulot who had been a friend of Bartlett and his wife for a period of twenty-one years. The Rigoulot home is located in Fairfax, Virginia, 17.3 miles from the naval office where the interviews were to take place.

After arriving at the Rigoulot home, Bartlett called a motel and cancelled reservations which he had previously made in his name for the night of 12 March 1970. Mrs. Rigoulot testified that Bartlett planned to stay in her home for the night. Mrs. Rigoulot's twenty-six year old son was also there. Bartlett had one drink, a bourbon and water, served by Mrs. Rigoulot's son. About 6:00 p.m., he and Mrs. Rigoulot drove to a restaurant in Arlington, Virginia. The restaurant is 15.3 miles from the Rigoulot home and about 2 miles from the office where Bartlett was to conduct the interviews the next morning.

Bartlett and Mrs. Rigoulot had one cocktail at the restaurant and then ordered shish kebab. None of the meal was eaten. Mrs. Rigoulot noticed that Bartlett was putting a large piece of meat into his mouth. He attempted to swallow the piece of meat, immediately began to choke, and lost consciousness. Bartlett was taken to an Arlington hospital where he died, 10 June 1970, without regaining consciousness. The parties stipulated that his death resulted from complications arising from his inhalation of the piece of meat on 12 March 1970 at the restaurant.

Bartlett had drawn a travel advance of $70.00 from his employer prior to leaving Durham and was to have been reimbursed for reasonable expenses incurred during the trip, including expenses for meals and lodging.

Commission Chairman Bunn found facts substantially as set forth above and concluded: "On March 12, 1970, deceased employee sustained an injury by accident arising out of and in the course of his employment with defendant employer, which injury by accident resulted in the death of the deceased employee on June 10, 1970." An award of compensation was ordered accordingly. Upon appeal to the Full Commission, the opinion and award of Chairman Bunn was affirmed.

*Bryant, Lipton, Bryant & Battle by F. Gordon Battle, Theodore H. Jabbs and James B. Maxwell for plaintiff appellee.*

*Newsom, Graham, Strayhorn, Hedrick & Murray by Josiah S. Murray III for defendant appellants.*

GRAHAM, Judge.

Defendants insist that the accident and injury resulting in the death of the deceased employee neither arose out of nor was suffered in the course of his employment.

"Under the Workmen's Compensation Act a compensable death is one which results to an employee from an injury by accident *arising out of* and *in the course of* his employment. G.S. 97-2(6) (1965); *Cole v. Guilford County,* 259 N.C. 724, 131 S.E. 2d 308 (1963). The two italicized phrases are not synonymous; they 'involve two ideas and impose a double condition, both of which must be satisfied in order to bring a case within the Act.' *Sweatt v. Board of Education,* 237 N.C. 653, 657, 75 S.E. 2d 738, 742 (1953)." *Robbins v. Nicholson,* 281 N.C. 234, 238, 188 S.E. 2d 350, 353.

The words "out of" refer to the origin or cause of the accident, and the words "in the course of" refer to the time, place and circumstances under which it occurred. *Bass v. Mecklenburg County,* 258 N.C. 226, 128 S.E. 2d 570, and cases cited.

[1, 2] We hold that Bartlett was in the course of his employment at the time of his accidental choking. An employee whose work entails travel away from the employer's premises is within the course of his employment, continuously during the trip, except when a distinct departure on a personal errand is shown. *Martin v. Georgia-Pacific Corp.,* 5 N.C. App. 37, 167 S.E. 2d 790, and authorities therein cited. "Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable." 1 A. Larson, Workmen's Compensation Law, § 25.00, p. 5-172 (1972).

In *Martin v. Georgia-Pacific Corp., supra,* this Court affirmed an award of compensation for the death of an employee who was struck and killed by an automobile while he was in Milwaukee, Wisconsin attending a one week training program at the request of his employer. At the time of the accident, deceased and some other students were walking to a steak house for dinner after having walked several blocks from their place of lodging to see some yachts moored on the Milwaukee River. In the opinion by Chief Judge Mallard it is noted:

"In order to attend the training program Martin [the deceased employee] had to travel from North Carolina to Milwaukee. He had to eat and he had to sleep. These were

necessities incidental to the trip. It is clear that he could not accomplish that which was assigned to him by the employer without traveling to Milwaukee, and eating and sleeping while there. We think there was a reasonable relationship between Martin's employment and the eating of meals. The eating of meals was reasonably necessary to be done in order that he might perform the act he was employed to do, to wit, attendance at the training program in Milwaukee. We are of the opinion and so hold that while Martin was on his way to eat the evening meal, under the circumstances of this case, that he was at a place where he might reasonably be at such time and doing what he, as an employee, might reasonably be expected to do, and that in so doing he was acting in the course of and scope of his employment." *Id.* at 43-4, 167 S.E. 2d at 794.

Defendants contend here that deceased was engaged in an activity completely personal to himself at the time of the fatal accident. They rely in particular upon *Perry v. Bakeries Co.,* 262 N.C. 272, 136 S.E. 2d 643, and *Sandy v. Stackhouse, Inc.,* 258 N.C. 194, 128 S.E. 2d 218.

In *Perry,* the employee was injured while swimming in the pool of a hotel where he was attending a sales meeting at the request of his employer. In *Sandy,* the employee was in South Carolina to assist in repairing power lines for his employer. He was released from duty at about 6:00 p.m. to return the following morning at 6:00 a.m. At about 9:00 p.m. he went to a restaurant approximately a quarter of a mile from the motel where he was staying to purchase a soft drink and some beer to take back to the motel. While returning to the motel he was struck by an automobile and killed.

In neither of the above cases was the employee engaged in an activity essential to the performance of the task assigned him by the employer. It was not necessary for Perry to swim or for Sandy to go to the restaurant after the dinner hour to obtain refeshments for his personal enjoyment. The function in which each was engaged at the time of his injury was of a strictly personal nature. It is true that in the instant case Mrs. Rigoulot was not connected with the duties which deceased was to perform for his employer in the Washington area. Moreover, visiting in her home and dining with her on the occasion in question was undoubtedly for the personal pleasure of deceased. The distinction, however, is that it was necessary for deceased to

eat while away from home on his employer's business. The fact he chose to engage in this essential activity under pleasurable conditions made it no less an act incidental to his employment than would have been the case had he dined alone or at a lunch counter beside a complete stranger.

In explaining that the act of eating by an employee who is away from his home on his master's business is in the course of his employment, the Georgia Supreme Court stated: "The eating of meals, while a pleasure indulged in by a traveling salesman and all mankind, is as necessary to the continuance of his duties as the breath of life; and where his duties take him away from his home, his acts of ministration to himself should not—and we believe do not—take him outside the scope of his employment, so long as he performs these acts in the normal and prudent manner. Such activities, the performance of which are necessary to his health and comfort, while in a sense personal to himself, are nevertheless incidents of his employment and acts of service therein within the meaning of the workmen's compensation act, although only remotely and indirectly conducive to the object of the employment." *Thornton v. Hartford Accident & Indemnity Co.*, 198 Ga. 786, 790, 32 S.E. 2d 816, 819 (1945).

The fact deceased traveled a distance of 17.3 miles from the office where he was to conduct the interviews to the home of Mrs. Rigoulot, and 15.3 miles from there to the restaurant does not, under the circumstances of this case, constitute a deviation from employment which would defeat recovery. At the time of the accident, he was only 2 miles from where his work required him to be the following morning. The record does not show that his employer placed any limitation on where he was to sleep or where he was to eat. Even if we assume that deceased deviated from the course of his employment in going to Mrs. Rigoulot's home for a personal visit, the record shows that at the time of the accident he was engaged in a necessary act "incidental to the trip."

A more difficult question is whether the accident arose out of deceased's employment. ". . . [I]t is generally said that an injury arises out of the employment 'when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so there is some causal relation between the injury and the performance of some service of the

employment.' *Perry v. Bakeries Co.*, 262 N.C. 272, 274, 136 S.E. 2d 643, 645 (1964). In other words, to be compensable, '[t]he injury must spring from the employment or have its origin therein.' *Bolling v. Belk-White Co.*, 228 N.C. 749, 750, 46 S.E. 2d 838, 839 (1948)." *Robbins v. Nicholson, supra* at 239, 188 S.E. 2d at 354.

We find no North Carolina case that involves a similar factual situation. However, the case of *Snyder v. General Paper Corp.*, 277 Minn. 376, 152 N.W. 2d 743 (1967), dealt with an identical type of accidental death. There, the deceased employee was a salesman for a paper wholesaler located in Minneapolis. He choked to death on a piece of meat while eating in a Chicago hotel during a business trip for his employer. The Minnesota court divided sharply on the question of whether the accident arose out of deceased's employment. Three justices held unequivocally that it did, reasoning that the event causing injury had its origin in circumstances created by the employer for the purpose of furthering the employer's business, and that the death or injury flowed as a natural consequence therefrom. A fourth justice concurred for the stated reason that deceased, who was dining with a customer at the time of his death, may have lapsed into careless eating habits because he was under stress and tension in attempting to make a sale. The Chief Justice and two justices dissented in separate opinions. The Chief Justice stated that the employee simply took a chunk of meat that was too big, attempted to swallow it without chewing, and choked. He was of the opinion this had no relationship to deceased's employment. One justice was of the opinion that the conditions of deceased's employment had no bearing on the fact that he choked to death while eating. He stated: "His injury resulted entirely from an unintentional but self-inflicted mishap. There is no evidence whatever that the choking was induced by any business activity." *Id.* at 390, 152 N.W. 2d at 752. The justice filing the third dissent agreed with the first two and expressed the further opinion that cases relied upon by the Industrial Commission in awarding compensation were similar but distinguishable.

The closeness of the decision in *Snyder* and the variety of positions taken in the five separate opinions illustrate the closeness of the question involved.

Construing the Workmen's Compensation Act liberally, as we must do, 5 Strong, N. C. Index 2d, Master and Servant, § 47,

and cases cited therein, we hold that the accidental choking in this case did arise out of deceased's employment.

As has been previously noted, the authorities are in general agreement that while an employee is away from home on the business of his employer, eating is a necessary act incidental to his employment. As stated by the Georgia Supreme Court, it is an act of service within the meaning of the Workmen's Compensation Act, "although only remotely and indirectly conducive to the object of the employment." *Thornton v. Hartford Accident & Indemnity Co., supra* at 790, 32 S.E. 2d at 819. In other words, an employee's act of eating under such circumstances is an act of employment. An accident "arises out of" the employment when it results from a risk involved therein or incident thereto. *Bolling v. Belk-White Co., supra.* The question therefore narrows to whether Bartlett's accidental choking resulted from a risk involved in the act of eating.

While the risk of accidentally choking while eating is obviously not as great a risk as that of being injured in a traffic mishap while riding or walking to a restaurant in order to eat, it is nevertheless a risk. It is a fact of life that on infrequent occasions people do accidentally choke to death while eating. Defendants properly point out that this is a risk common to the community in general. However, the distinction is that in this case the act of eating, which subjected deceased to the risk involved, was also an act of his employment.

The only rational distinction we can see between the risk of being struck by a car and killed while on the way to eat *(Martin v. Georgia-Pacific Corp., supra)* and the risk of being accidentally injured while actually engaged in the act of eating, is that experience establishes that the former risk is substantially greater than the latter. The degree of risk, however, is not controlling. The causative danger need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence. *Robbins v. Nicholson, supra.*

We have not overlooked the two North Carolina cases principally relied upon by defendants in contending that the injury and resulting death did not arise out of deceased's employment.

In *Cole v. Guilford County,* 259 N.C. 724, 131 S.E. 2d 308, the deceased's fall was caused *solely* by an idiopathic condition

unrelated to her employment. In the instant case, there was no showing that the employee choked because of any physical or mental anomaly or disease. The evidence does indicate that he may have been negligent in attempting to swallow a piece of meat that was too large. However, the negligence of an employee does not bar him from compensation for an injury by accident arising out of and in the course of his employment. *Stubblefield v. Construction Co.*, 277 N.C. 444, 177 S.E. 2d 882; *Allred v. Allred-Gardner, Inc.*, 253 N.C. 554, 117 S.E. 2d 476. In the recent case of *Robbins v. Nicholson, supra,* two employees of a grocery store were unexpectedly shot and killed by feme deceased's jealous husband while the employees were working on their employer's premises. The Supreme Court reversed and remanded a decision allowing compensation for the deaths. We simply note that being shot by a jealous husband did not arise from the risk of any service being performed by the employees for their employer. In this respect, that case is distinguishable from the instant case.

Affirmed.

Judge HEDRICK concurs.

Judge CAMPBELL dissenting:

If it be conceded that Bartlett had not deviated from his employment when he was eating with a friend on a purely personal and social occasion and at the time in no way conducting any business for his employer, which is going far, nevertheless, I find no causal relationship between the choking on a piece of steak and working for Duke University. The death in the instant case did not "arise out of the employment" as I understand that requirement in order to be compensable. Judge Graham has reviewed the authorities, and nothing would be gained by a repetition thereof. His opinion is full and complete. The Minnesota case at least presented a situation where the employee was entertaining a prospective customer in an effort to make a sale. This situation does not exist in the present case. I think *Robbins v. Nicholson*, 281 N.C. 234, 188 S.E. 2d 350 (1972), is controlling.