TRAVELERS INSURANCE COMPANY
and News Tribune Company,
Appellants,

v.

Evelyn D. MAJERSKY et al.,
Respondents.

No. KCD 27805.

Missouri Court of Appeals,
Kansas City District.

Dec. 8, 1975.

Motion for Rehearing and/or Transfer
Denied Jan. 12, 1976.

Application to Transfer Denied
March 8, 1976.

Tweedie Fisher, Jefferson City, for appellants.

Thomas D. Graham, James C. Swearengen, Graham & Hawkins, Jefferson City, for respondents.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Appeal from judgment of circuit court affirming award of Industrial Commission of death benefits under Workmen's Compensation Act to survivors of employee.

On February 13, 1973, Mr. Joseph Majersky, editor of the Jefferson City Post-Tribune, attended a chamber of commerce awards banquet at the Ramada Inn in Jefferson City. He was asked to "cover" the event for the paper by its managing editor and the newspaper company provided the ticket for Mr. Majersky. In covering the function, Majersky was required to write a news article for publication in the paper. He actually composed an article prior to going to the banquet, but was obliged to call in any changes that might be required by unanticipated events.

The dinner was served beginning around 7:30 P.M. The main course was steak. Majersky was seated at a table with several other persons and insofar as was noticed ate his meal without incident. He did, however, leave the table prior to dessert being served.

A short time later, he was seen in a restroom, coughing and attempting to drink water from his hand. He stated that he had something in his throat. His coughing became worse and he became unconscious. An ambulance was called and he was taken to Still Hospital. The doctor in charge of the emergency room there found Majersky cyanotic, without heartbeat or spontaneous breathing. As part of the emergency treatment, the doctor began intubation with an endotracheal tube in an attempt to supply oxygen. As he started to put the tube down, he saw a large piece of meat, three centimeters by three centimeters by two centimeters, right at the beginning of the trachea. He removed the meat with forceps but efforts to revive Majersky failed. The doctor stated that in his opinion death resulted from a lack of oxygen, the result of blocking of the trachea by a large piece of meat. "Cafe Coronary" was the term used by him to describe the occurrence.

A referee of the Workmen's Compensation Division awarded death benefits under the Workmen's Compensation Law, payable to the widow and children of the deceased. The employer-insurer appealed to the Industrial Commission. By a 2–1 opinion, the Commission affirmed the award of compensation. The Cole County Circuit Court affirmed the ruling of the Commission. This appeal followed.

In this court, appellants assert that the award of compensation was erroneous because there was not sufficient evidence of an "accident", within the meaning of § 287.-020 2., RSMo 1969, and further because there was not sufficient evidence that the accident, if any, arose "out of" employment, within the meaning of § 287.120, RSMo 1969.

On the first issue the finding of the Commission was as follows:

"The testimony of Dr. Thomas is that he discovered the piece of unchewed meat in the trachea (windpipe) beneath the fold of

the epiglottis (cover of windpipe which ordinarily closes when one swallows). Of course, we will never know whether the large piece of meat became lodged in this position immediately upon swallowing it, or whether the employee regurgitated the piece of meat and it then became fixed in the position in which it was found upon subsequent inhalation. It is clear to us, however, that the piece of meat removed from the trachea by Dr. Thomas had effectively plugged the employee's windpipe and that this obstruction directly caused his ultimate death from lack of oxygen. It is unimportant for our purpose here by what internal route the piece of meat made its entrance. Having made this seemingly obvious determination, we turn now to the question of whether or not the event constitutes an accident.

"Section 287.020.2, RSMo 1969 provides that:

'The word "accident" as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury.'

"We find that the event in question here precisely satisfied in every respect the statutory definition of an accident. It most certainly was unexpected and unforeseen. It happened suddenly and obviously very violently and vividly produced at the time objective symptoms not only of injury, but of impending death as well. Accordingly we must conclude that the death of the employee was the result of an accident within the meaning of the Act."

Appellants question the conclusion that, regardless of the course of the passage of the piece of meat, the occurrence was an "accident." They contend that, if the piece had been swallowed and then regurgitated, the testimony of the pathologist who performed an autopsy suggests that such an occurrence might have resulted from some internal condition of the deceased. They contend that, in such event, the producing cause would have been "natural in the sense of a physical malfunction and not an 'accident' * * *." Appellants refer to the pathologist's finding of hemorrhaging about the esophagus which he said is "usually" related to "something large having passed into the esophagus and it made an effort to dislodge something." On cross-examination, the witness stated that the spasm and resulting hemorrhaging need not have been so caused and might have "many other internal causes."

■ This testimony did not produce a situation in which the evidence showed the two possible causes of death, one compensable and the other not, making any effort by the Commission to resolve the question necessarily conjecture and speculation. The objective evidence of the presence of the meat in the trachea, which the pathologist did not consider inasmuch as he found no obstruction, coupled with the testimony of the emergency room physician, adequately supports the Commission's finding on this issue.

Appellants' second contention is that the award of the Commission is erroneous because there was not sufficient competent evidence that the accident arose out of employment. This contention calls into play the provision of § 287.120 1., RSMo 1969, imposing liability upon an employer under the Workmen's Compensation Law " * * for personal injury or death of the employee by accident arising out of and in the course of his employment * * *." Appellants concede that the accident here occurred "in the course of" the employment and question only the existence of evidence to support the required independent finding (*Gregory v. Lewis Sales Company,* 348 S.W.2d 743, 745[1, 2] (Mo.App.1961)) that the accident was one "arising out of" the employment.

This problem is one that has arisen repeatedly in Workmen's Compensation cases. A fair summary of the law governing the application of this requirement is to be

found in *Heaton v. Ferrell*, 325 S.W.2d 800, 803–804[2–5] (Mo.App.1959), as follows:

" * * * An injury arises *out of the employment* when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury, and *in the course of the employment* when it occurs within the period of employment, at a place where the employee reasonably may be, and while reasonably is fulfilling the duties of his employment or is engaged in doing something incidental thereto. But, recognizing the difficulty often encountered in applying broad legal principles to specific factual situations, our courts as frequently have said that no all-embracing definition of the phrase 'arising out of and in the course of his employment' has yet been framed, and have added the common-sense admonition that every case involving the quoted phrase should be decided upon its own particular facts and circumstances and not by formula. However, it may be helpful in consideration of the instant case to bear in mind that, before an injury may be said to arise out of the employment, it must have been a rational consequence of some hazard connected with the employment; that, generally speaking, the scope of the contract of employment furnishes the determinative test as to whether or not the accident is compensable as 'arising out of and in the course of * * * employment'; and that cases involving construction and application of the quoted phrase usually have turned upon the point whether, under the particular circumstances of each such case, the injury arose from something which had become an incident to the employment." (footnotes omitted)

See also *Liebman v. Colonial Baking Company,* 391 S.W.2d 948 (Mo.App.1965).

■ In this case, the evidence as to the circumstances of the employee's death was uncontradicted. The employee attended the dinner at the direction of his employer and in the direct furtherance of the employer's business. The employer was aware that the duty thus imposed upon the employee entailed the consumption of a meal because it provided a ticket for that purpose. The hazard of choking in eating is well enough recognized to have acquired a denomination in medical terminology of "cafe coronary." In these circumstances, the accident clearly was "a rational consequence of some hazard connected with the employment." *Heaton v. Ferrell,* supra. See *Everard v. Woman's Home Companion Reading Club,* 234 Mo.App. 760, 122 S.W.2d 51 (1938).

Appellants would further require that the hazard involved have been "a special risk peculiar to the employment" (citing *Howard v. Ford Motor Company,* 363 S.W.2d 61, 67[7, 8] (Mo.App.1962)) and argues that the risk of choking while eating was common to all partaking of the dinner and was not a special risk of the employment.

That the Industrial Commission so regarded the problem as involving "a special risk" is evident from its finding on this issue, as follows:

"We find that the injury and resultant death in this case had its source in circumstances in which the employee's employment placed him. The employee's dinner on the night in question was taken under unusual circumstances at the direction of his employer who furnished the ticket for that very purpose. We find evidentiary support for an inference that the employee took a different and greater risk than if he had been pursuing his ordinary personal affairs. Here the environment of the occasion—the fact that the head table had been served first and was ready to proceed with the program he was to report—the stress of finishing his meal so that he could be on and about his assignment—was a different circumstance than the ordinary leisurely consumption of an evening meal. While it may be true, as the employer contended in oral argument, that the choking was the result of bad eating habits, we find that it was the stress and tension of his particular assignment that night and the haste in which he felt he was required to consume his meal which caused the employee to lapse

into the careless method of eating which caused him to choke to death."

This court cannot say that this was an unreasonable inference for the Commission to have drawn as to the ultimate fact. Common experience teaches that a person who partakes of a meal as part of an evening of pleasure and entertainment is not faced with the same pressures as a man who partakes of the same meal as part of the duties of his employment and who is required to be alert to the developments of the occasion in order to carry out his employer's mission.

Certainly the issue here involved is not markedly different from that presented in *Everard v. Woman's Home Companion Reading Club,* supra. In that case an employee engaged in soliciting magazine subscriptions had lunch with his crew manager and other members of the crew. During the lunch period some activity on behalf of the employer occurred. In leaving the restaurant, the employee stuck a splinter in his foot from the restaurant floor. The case perhaps presented a question more directed to "course of" employment but the court also considered the question of "arising out of" and concluded that the Workmen's Compensation Commission could have properly concluded that both requirements were met. Under the rationale of that case, had the death here occurred when the employee fell over an obstruction while leaving the site of the dinner, the accident would have been compensable. No difference in principle appears to be presented by the situation here involved, inasmuch as the fault of the employee is not a factor for consideration.

The parties have cited two cases from other jurisdictions which have considered a problem similar to that here presented. Appellants point to *Klein v. Terra Chemicals International, Inc.,* 14 Md.App. 172, 286 A.2d 568 (1972). That case involved a choking death of an employee at a public restaurant. However, in that case the employee was not partaking of his meal because of any obligation, condition or incident of his employment.

More similar to this case is the case cited by respondents, *Snyder v. General Paper Corporation,* 277 Minn. 376, 152 N.W.2d 743 (1967). That case involved a Workmen's Compensation claim arising out of the death of a salesman who choked on a piece of meat while eating in a hotel restaurant, where he had, at the direction of his employer, taken a customer to dinner with the hope of making a sale of the employer's product. In a 4–3 decision, the Minnesota Supreme Court upheld an award of benefits.

Three of the members of the court who voted for affirmance of the award did so on the basis that the Industrial Commission was justified in concluding that the accident arose out of the employment. The essence of their views is found in the following statement (152 N.W.2d 749):

" * * * The question is simply whether the employment is the predominant factor in exposing an employee, in a different manner and to a greater degree than if he had been pursuing his ordinary personal affairs, to a hazard which may or may not be peculiar to or exclusively associated with the employment, and which hazard, though part of the general working environment, may be in direct consequence of an injury-producing act or event produced wholly within or without the orbit of work done for the employer by the employee or others."

One judge concurring specially reached a factual conclusion with which the finding of the Industrial Commission in this case is markedly similar. 152 N.W.2d 751.

There were three vigorous dissents, charging that the majority had obliterated the distinction between "course of" employment and "arising out of" employment. The finding of the concurring judge was attacked as without basis in the evidence. 152 N.W.2d 751–754.

That case is, of course, in no manner controlling upon this court. However, its persuasive value may not be ignored. Appellants' contention to the contrary, it can-

not be said that the majority of the court imposed liability on a positional risk basis, as the court did consider and weigh the increase in the hazard to the employee because of the obligation to his employer involved in partaking of the meal.

Given the primary obligation of the Industrial Commission in a case such as this and the nature of the court's function on review, this court cannot say that "there was not sufficient competent evidence in the record to warrant the making of the award" (§ 287.490 1. (4), RSMo 1969) and therefore the judgment of the trial court, upholding the award in favor of the respondents, must be affirmed.

Judgment affirmed.

All concur.