(MRS.) EVELYN BARTLETT, WIDOW OF ROBERT B. BARTLETT, DECEASED, EMPLOYEE-PLAINTIFF v. DUKE UNIVERSITY, EMPLOYER, AND GLENS FALLS INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 8

(Filed 14 November 1973)

1. **Master and Servant § 56— workmen's compensation — in the course of employment — arising out of employment**

    As used in the Workmen's Compensation Act, the phrase "in the course of the employment" refers to the time, place and circumstances under which an accidental injury occurs; "arising out of the employment" refers to the origin or cause of the accidental injury.

Bartlett v. Duke University

2. Master and Servant § 56—workmen's compensation—causal relation between injury and employment

    To have its origin in the employment an injury must come from a risk which might have been contemplated by a reasonable person familiar with the whole situation as incidental to the service when he entered the employment.

3. Master and Servant § 56—workmen's compensation—traveling employee—choking to death in restaurant

    There was no causal relation between the death of a university employee and his employment where the employee, during a trip to Washington, D. C., to recruit an employee for the university, choked to death on a piece of meat while dining at a public restaurant with an old friend whom the trip to Washington had enabled him to visit.

APPEAL by defendants under G.S. 7A-30(2) from the decision of the Court of Appeals affirming an award of the North Carolina Industrial Commission in favor of plaintiff-claimant.

    Plaintiff, the widow of Robert B. Bartlett, a retired Commander in the Civil Engineering Corps of the United States Navy, instituted this proceeding by filing a claim with the North Carolina Industrial Commission to recover compensation under the Workmen's Compensation Act for the death of her husband. The essential facts, which are either stipulated or undisputed, follow:

    On 12 March 1970 Bartlett was employed by Duke University as Construction Administrator, Senior Administrative Staff. On that date he went by airplane to Washington, D. C. to explore the possibility of securing for the University a maintenance engineer from retiring Naval personnel. The Architect and Director of Physical Planning for Duke University testified that this trip "was in the course and scope of his employment by Duke University." Upon his arrival in Washington, Bartlett went to the office of the Naval Facilities Engineering Command, where he remained for several hours. He procured the names of three retiring officers who were prospects for the position he was seeking to fill, and he arranged an appointment with one of them for the following morning, March 13th. Thereafter he went to the home of long-time friends of his family, where he was to spend the night.

    About 6:30 p.m. Bartlett and his hostess, Mrs. Rigoulot, proceeded to the Orleans House, a restaurant in nearby Rosslyn. While eating shish kebab Bartlett aspirated a chunk of meat and immediately became unconscious. The rescue squad was

called, and he was promptly taken to a hospital in Arlington, Virginia. Bartlett never regained consciousness. On 30 April 1970, he was transferred to the Naval Hospital in Bethesda, Maryland, where he died on 10 June 1970 from complications arising from the aspiration of the meat.

Before embarking on his flight to Washington, Bartlett had obtained an advance travel allowance from the University. Upon documentation of his expenditures, in addition to the cost of transportation, Bartlett would have been entitled to reimbursement for subsistence in amounts not to exceed $16.00 per night for lodging and $3.50 per meal. The University had no policy against its employees staying in the home of friends while away on University business. "In lieu of documentation" he would have been entitled to a per diem subsistence allowance of $16.00.

On 12 March 1970 Bartlett and Duke University were bound by the provisions of the Workmen's Compensation Act, and defendant Glens Falls Insurance Company was the compensation insurance carrier for the University.

Plaintiff's claim was heard on 25 June 1971 by Industrial Commission Chairman J. Howard Bunn, Jr. He concluded that Bartlett's death resulted from an injury by accident arising out of and in the course of his employment, and awarded plaintiff the benefits provided by G.S. 97-38 and G.S. 97-25. Defendants appealed to the full Commission, which affirmed the findings and award of Chairman Bunn. From the Commission's decision defendants appealed to the Court of Appeals, which affirmed the Commission in a 2-1 decision. *Bartlett v. Duke University*, 17 N.C. App. 598, 195 S.E. 2d 371 (1973). One member of the panel having dissented, defendants appealed to this Court as a matter of right.

*F. Gordon Battle, Theodore H. Jabbs, James B. Maxwell, and Bryant, Lipton, Bryant & Battle for plaintiff-appellee.*

*Newsom, Graham, Strayhorn, Hedrick, Murray & Bryson by Josiah S. Murray III for defendant appellant.*

SHARP, Justice.

[1]   Under the Workmen's Compensation Act plaintiff's right to recover compensation for the death of her husband depends upon whether it resulted from an "accident arising out of and in the course of his employment" by Duke University. G.S. 97-2(6).

As used in the Act the phrase, "in the course of the employment," refers to the time, place, and circumstances under which an accidental injury occurs; "arising out of the employment" refers to the origin or cause of the accidental injury. The two phrases involve two ideas and impose two conditions, both of which must be met to sustain an award. *Sweatt v. Board of Education,* 237 N.C. 653, 75 S.E. 2d 738 (1953).

Conceding *arguendo* that, from the time of his arrival in Washington on the morning of 12 March 1970 up to and including the time he accidentally aspirated the kebab while dining at a restaurant that evening, Bartlett was in the course of his employment, the determinative question is whether a causal relation existed between his choking on the meat and his employment.

As we noted in *Robbins v. Nicholson,* 281 N.C. 234, 238-9, 188 S.E. 2d 350, 354 (1972), "The term 'arising out of the employment' is not susceptible of any all-inclusive definition, but it is generally said that an injury arises out of the employment 'when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so there is some causal relation between the injury and the performance of some service of the employment.' "

[2] To have its origin in the employment an injury must come from a risk which might have been contemplated by a reasonable person familiar with the whole situation as incidental to the service when he entered the employment. The test "excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." *In re Employer's Liability Assurance Corporation,* 215 Mass. 497, 499, 102 N.E. 697, 697 (1913) (quoted with approval in *Harden v. Furniture Co.,* 199 N.C. 733, 735, 155 S.E. 728, 729-30 (1930), and *Robbins v. Nicholson, supra* at 239, and in accord with other cases cited therein). *See Cole v. Guilford County,* 259 N.C. 724, 131 S.E. 2d 308 (1963).

[3] Applying the foregoing test to the facts of this case, we hold that there was no causal relation between Bartlett's employment and his aspiration of the kebab. His day's work over and, business engagements scheduled for the morrow, he was having a leisurely evening meal at a public restaurant with an old friend, whom the trip to Washington had enabled him to visit. In this relaxed situation he put "a very large piece of meat" in his mouth. His friend "was of the opinion that it was too large, that he should have cut it in half but he consumed it anyway and immediately after he began to choke."

The risk that Commander Bartlett might choke on a piece of meat while dining at the Orleans House was the same risk to which he would have been exposed had he been eating at home or at any other public restaurant in the Washington area. Whether employed or unemployed, at home or traveling on business, one must eat to live. In short, eating is not peculiar to traveling; it is a necessary part of daily living, and one's manner of eating, as well as his choice of food, is a highly personal matter.

The National Safety Council of America estimates that 2,500 Americans choke to death on food each year, making food inhalation the sixth leading cause of accidental death. Understandably, however, few cases are reported in which claimants have sought compensation for the death of an employee, traveling on business for his employer, who choked to death while eating in a restaurant away from home. One such case, however, is *Klein v. Terra Chemicals International, Inc.,* 14 Md. App. 172, 286 A. 2d 568 (1972). In denying the widow's claim for workmen's compensation benefits, the Court of Special Appeals of Maryland said:

"That Klein choked on a piece of meat at a public restaurant while in the course of his employment with Terra Chemicals was not, in our opinion, the result of any obligation, condition, or incident of his employment; it did not occur because of any business activity attributable to his work. Klein's accident did not follow as a natural incident of his work, it was not, within reasonable contemplation, the result of any special exposure occasioned by the nature of his employment. Nor could it be traced to his employment as a contributing proximate cause; it did not flow from a hazard peculiar to his work, or incidental to the character of his employment. The risk he encountered in the public restaurant of choking on a piece of meat was no

greater or different in degree because of his employment than the risk experienced by all persons engaged in the process of eating a meal, whether in a restaurant or at home. . . . In short, there was nothing in Klien's work, or in the conditions under which it was required to be performed, that caused his injury." *Id.* at 176-77, 286 A. 2d at 570-71.

In *Snyder v. General Paper Company,* 277 Minn. 376, 152 N.W. 2d 743 (1967), by a 4-3 decision (one member of the majority concurring specially), the Supreme Court of Minnesota held that the death of a traveling employee, caused by choking on a piece of meat in a hotel restaurant where the employee was entertaining a prospective customer pursuant to his employer's instructions, arose out of and in the course of the employment. Justice Nelson, speaking for the majority, said: "Workmen's compensation cases in this state indicate that an injury arises out of the employment if, after the event, it can be seen that the injury has its source in circumstances in which the employee's employment placed him." *Id.* at 383, 152 N.W. 2d at 748. This broad generality is not the law in this jurisdiction.

On the contrary, the opinions of the three dissenting justices accord with the rationale upon which we decide this case: (1) There is no "causal relationship between choking on a piece of steak and the employment of decedent, even though he was eating while he was on the job." *Id.* at 389, 152 N.W. 2d at 751. (2) Conceding that the decedent died while in the course of his employment, nevertheless, "the conditions of his employment had no bearing on the fact he choked to death. His injury resulted entirely from an unintentional but self-inflicted mishap. There is no evidence whatever that the choking was induced by any business activity." *Id.* at 390, 152 N.W. 2d at 752. (3) To hold decedent's death compensable is either to "write out of the statute the essential factor that an accident must 'arise out of' the employment or [to] set traveling salesmen apart for vastly more favorable treatment than is accorded other employees. This manifestly was not the legislature's intent." *Id.* at 393, 152 N.W. 2d at 754.

The decisions cited by plaintiff which involve injuries sustained by an employee while walking or riding from his hotel to a restaurant, while eating on the employer's premises, or which result from eating tainted food at a place where the employer required him to eat, are not pertinent to the question we have decided here. *See Thornton v. Hartford Accident &*

*Indemnity Co.*, 198 Ga. 786, 32 ·S.E. 2d 816 (1945) ; *Tscheiller v. Weaving Co.*, 214 N.C. 449, 199 S.E. 623 (1938) ; 17 N. C. Law Rev. 458 (1939) ; 1 Larson, Workmen's Compensation Law, §§ 25, 25.21 (1972) ; Annots., 6 A.L.R. 1151 (1920) ; 57 A.L.R. 614 (1928).

In our view the unquestioned facts compel the conclusion that the accident which caused Commander Bartlett's untimely death did not arise out of his employment. The decision of the Court of Appeals is reversed with directions that it remand the cause to the Industrial Commission for the entry of an award in accordance with this opinion.

Reversed.