Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission find as fact and conclude as matters of law the following which were entered into by the parties at the hearing before the deputy commissioner as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employee-employer relationship existed between the plaintiff and the defendant-employer.
3. The Constitution State Service Company was the compensation carrier on the risk.
4. Plaintiff's average weekly wage is $390.00, which yields a compensation rate of $193.33 per week.
5. Plaintiff suffered a fall on December 2, 1991 and claims that she injured her back.
6. The defendant-employer admitted that plaintiff suffered a fall but denied any injury resulting therefrom.
7. The parties further stipulated to the testimony of Dr. John Hamrick and Dr. John Davis by deposition.
8. The issue to be determined by the Commission is whether plaintiff, in fact, suffered an injury by accident and whether the problems she now complains of are related to the fall on December 2, 1991.
* * * * * * * * *
Based upon the credible evidence of record, the Full Commission make the following additional
FINDINGS OF FACT
1. Plaintiff slipped and fell while at work in December 2, 1991. Thereafter, she was able to do all of her Christmas shopping, grocery shopping, and other activities related to the Christmas season. In addition, she also helped with her father who was seriously ill during this period of time. She continued to work full time from December 2, 1991 until April of 1992. She never requested any light duty work assignments because of any problems she was experiencing with her back.
2. Plaintiff first sought medical treatment with Dr. John Davis on April 3, 1992. Dr. Davis performed a physical examination at that time which, other than some subjective complaints of pain, was otherwise relatively normal. There was no evidence of a herniated disc at that time.
3. The plaintiff then returned to see Dr. Davis on April 16, 1992. At that point, there was a marked change in her examination. At this time, the tests given by Dr. Davis to determine whether a herniated disc existed were positive. In fact, his diagnosis changed from "chronic lumbar syndrome" to "symptoms characteristic of a disc herniation at L5-S1 on the left." This represented a worsening of her symptoms in April of 1992. Dr. Davis concluded that plaintiff probably did not have a herniated disc when he first saw her on April 3, 1992.
4. With respect to causation regarding plaintiff's injury, herniated discs are usually due to multiple episodes of minor trauma. Sometimes there could be a precipitating thing. There was no way to medically determined when a herniation occurred. Dr. Davis did not have an opinion as to whether the herniation occurred at any period before or after December 1991. Dr. Davis never gave a clear opinion regarding causation. He only stated there was a pattern that her symptoms began after her fall and persisted until they worsened in April of 1992. Dr. Davis, in explaining the difference between the two examinations of April 3 and April 16, stated that plaintiff may have had some unrecognized minor trauma that was the last straw that produced the disc herniation. She may have coughed or sneezed and that was enough to cause the actual herniation. Dr. Davis also gave no disability rating regarding her injury in 1991.
5. Plaintiff suffered a reinjury in December of 1992 when she lifted some cloth and experienced additional pain. Dr. Davis examined her for that incident as well and placed her on light duty as a result. However, plaintiff recovered from that episode; and there was no residual disability resulting.
6. Any kind of lifting can precipitate a herniated disc. Any lifting can cause a herniated disc.
7. Plaintiff was also seen by Dr. John Hamrick on one occasion in November 1993 almost two full years after her fall at work. Dr. Hamrick did not have the benefit of Dr. Davis' records and was unaware of the significant difference between plaintiff's first visit and her second visit with Dr. Davis. However, Dr. Hamrick did state that if he were examining plaintiff and saw that kind of a difference, he would say "Lord have mercy, what did you do during this period of time. . . ."
8. When Dr. Hamrick was asked whether a fall at work was compatible with the herniated disc, he agreed that it was, but also stated disc problems were compatible with picking up a toothbrush. Dr. Hamrick repeatedly emphasized that causation is really unknown. In fact, he stated: If we knew the basic cause of disc problems, all of us in this room could quit working. I mean, it is just so prevalent, and there is, we don't know, and that is the reason we treat the effect of it, we don't treat the cause of it, as far as surgery is concerned.
9. Dr. Hamrick also agreed that there was no way to determine when the disc herniated. While he agreed that a fall could rupture the disc, he stated that one "can cough real hard and rupture a disc too."
10. Dr. Hamrick also agreed that causation with respect to herniated discs is extremely difficult to pinpoint. In fact, he stated that it would be equally likely for plaintiff's herniated disc to have been caused by a fall as it was an intervening incident between April 3 and April 16. He went on to state that whichever one of these is true, "only the good Lord knows." He stated that picking up a toothbrush or coughing could be the actual event that precipitates a herniated disc, but someone would not recognize that incident as easily as they would a fall; and therefore, the doctor would not get a history of the minor incident. When specifically asked how Dr. Hamrick would be able to say that the fall caused plaintiff's herniated disc in light of the medical evidence in this case, he said only that it was consistent with a fall, but agreed that it was only because the fall was the most "graphic" incident and the only incident the patient remembers. The doctor went on to state: "Really and truly, since we don't know the ultimate cause, whether that's the cause or not, we don't know,. . . ."
11. Dr. Hamrick agreed that plaintiff's condition was equally consistent with other less significant traumas. Dr. Hamrick went on to state that he agreed with the reasoning that it would be impossible to point to one specific thing as the cause of the herniated disc as to many different things can cause it. A. ruptured disc can occur as the result of numerous minor traumas.
12. Dr. Hamrick stated that he agreed with Dr. Davis that plaintiff did not have any disability rating as a result of the December 1992 reinjury. Any disability that he assigned would be related to the original problem.
13. After plaintiff's reinjury in 1992, she did return to the same physical condition she was in after her first injury. In other words, there is no ongoing aggravation.
* * * * * * * * * *
Based on the foregoing stipulations and findings of fact the Full Commission make the following
CONCLUSIONS OF LAW
1. It is fundamental under the Workers' Compensation Act that plaintiff must describe a causal relationship between the injury and her employment in order to recover. Bartlett v. Duke University,284 N.C. 230, 200 S.E.2d 193 (1973). It is equally clear that the evidence presented to establish causation must rise above the level of speculation. Gilmore v. Hope County Board of Education,222 N.C. 358, 23 S.E.2d 292 (1942). This is particularly true when dealing with cases involving herniated discs. Click v.Pilot Freight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980) ("one of the most difficult problems in legal medicine is the determination of the causal relationship between a specific trauma and the rupture of an intervertebral disc.")
2. In every workers' compensation matter, the plaintiff has the burden of proving all facets of his case "beyond speculation and conjecture" and by the preponderance of the evidence. Larson,The Law of Workers' Compensation, § 80.33 (a) (1989). Dr. Hamrick's statement that "only the good Lord knows" where plaintiff's herniated disc came from the fall or any number of other minor traumas is not proof by a preponderance of the evidence.
3. Since plaintiff did not carry her burden of proof in this case, she cannot prevail.
* * * * * * * * *
Based on the foregoing findings of fact and conclusions of law the Full Commission enter the following
AWARD
1. Plaintiff's claim for workers' compensation benefits in this case is hereby DENIED.
2. Each side shall pay its own costs.
 S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________________ THOMAS J. BOLCH COMMISSIONER
BSB:md