The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the Full Commission reaches the same facts and conclusions as those reached by the Deputy Commissioner with some minor modifications. The Full Commission, in its discretion, has determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and award.
Therefore, upon review of all of the competent evidence of record with reference to the errors assigned, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with minor modifications as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Worker's Compensation Act.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer.
3. The PMA Group is the compensation carrier on the risk.
4. Plaintiff's average weekly wage is $191.09, which yields a compensation rate of $127.39 per week.
5. Plaintiff suffered an injury by accident on January 3, 1994, when she tripped and fell.
6. The defendant-employer admitted liability to the right leg and certain benefits were paid.
7. The issues to be determined by the Commission are what additional medical treatment should plaintiff receive and what additional compensation benefits should plaintiff receive.
8. The parties further stipulated to exhibits J-1 through J-15, a pre-trial agreement, and the deposition transcripts of Dr. L. Davis Frederick and Dr. Abner Griswold Bevins, Jr.
* * * * * * * * * * *
Based on the credible evidence of record, the Full Commission adopts in part and modifies in part the Findings of Fact of the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. On January 3, 1994, while performing her job duties, plaintiff tripped over some unlevel concrete and fell. She presented to the Emergency Room that evening wherein she complained of right knee and right arm pain, and x-rays were taken of her right knee, right elbow and right foot, all of which were negative. Plaintiff did not make any specific complaints whatsoever concerning her left leg. At the hearing before the Deputy Commissioner, plaintiff testified as to the condition of her left leg on the occasion of her appearance at the Emergency Room January 3, 1994: "It wasn't hurting right then. . . . I was just hurting all over." [Trans., p. 46.]
2. In 1993 plaintiff worked an average of 15 days a month. After plaintiff's fall on January 3, 1994, she continued to work on as regular basis as she had prior to her fall; although she worked at a different job — a sedentary rather than a standing job.
3. On March 30, 1994, plaintiff saw Dr. L. David Frederick, an orthopaedic surgeon in Goldsboro, North Carolina, for her left leg and left heel problems. Dr. Frederick's medical records reflect that plaintiff's chief complaint at that time was her left foot pain which she reported had commenced March 14, 1994. His examination revealed that the Achilles tendon was intact and that there was no dent or gap in the tendon structure. His office notes at that time did not reveal if plaintiff had reported any fall at work. Dr. Frederick gave plaintiff a work activity status form which kept her out of work from March 30, 1994, through April 5, 1994, at which time he stated that she could return to modified work which meant that she was required to wear her rocker bottom boot at work.
4. Plaintiff next saw Dr. Frederick on May 31, 1994. Dr. Frederick ordered an MRI which revealed some tears in the Achilles tendon. Plaintiff's tendon had some fibers which were still intact and it was not completely ruptured. Dr. Frederick did not feel any gap or dent in the plaintiff's tendon.
5. Dr. Frederick saw plaintiff again on June 13, 1994. On that visit, he found that the plaintiff was doing extremely well and the swelling had gone down and plaintiff looked very good. Dr. Frederick did not feel any dent or gap in the plaintiff's Achilles tendon. Dr. Frederick at that time advised the plaintiff that they should not do surgery and she should return to work the next week and that it was the best it had ever been.
6. Dr. Frederick indicated that it was possible that the avulsion seen on the MRI which was performed on June 1, 1994, was the same avulsion that he suspected in December of 1993, three and a half weeks before plaintiff's fall at work.
7. When Dr. Frederick saw plaintiff on July 7, 1994, he found an obvious gap in the tendon that plaintiff mentioned to him for the first time and he felt it for the first time. Plaintiff reported to Dr. Frederick that she had tripped over a pine cone. It was after this appointment that the surgery became medically necessary and was performed on July 11, 1994.
8. During the surgery, Dr. Frederick found obvious defects. Upon entering the skin, he found an obvious tear in the Achilles tendon. The sheath had been ruptured. The tendon looked like an old laceration as opposed to a direct rupture. He found some of the frayed ends of the tendon were probably rounded off in the healing phase so there was some chronic nature of the tendon rupture . . . or some of this was old.
9. Dr. Frederick concluded that the plaintiff's Achilles tendon condition could easily be related to the condition he had treated her for in December of 1993 before her fall. [Dr. Frederick Deposition, pp. 50-51.] He also concluded that had plaintiff injured her Achilles tendon on January 3, 1994, he would have expected the onset of pain to have begun before mid-March. He further concluded that had plaintiff ruptured her Achilles tendon during the fall of January 3, 1994, she would have had some signs or symptoms in the emergency room.
10. According to Dr. Frederick, there was no way to tell when the microscopic avulsions or partial tear of the Achilles tendon occurred in that plaintiff was suffering from symptoms on the left Achilles tendon some three weeks before she ever fell on January 3, 1994. Dr. Frederick admitted that it was just as likely that the treatment between March 1994 and July 1994 was related to the condition he treated the plaintiff for in December of 1993.
11. The plaintiff previously had been treated by Dr. Sam McLamb and Dr. Frederick for her left foot in 1992. The medical records noted that the plaintiff was complaining of her left foot and tendonitis and that the plaintiff's Achilles tendon was tender with marked tenderness on the insertion of that tendon.
12. Plaintiff did not injure her left leg or foot when she fell on January 3, 1994. Whatever injury existed to plaintiff's left leg and foot were ongoing and existed prior to her fall. There is insufficient evidence in the record that plaintiff's fall aggravated any pre-existing condition of either her left leg or left foot.
* * * * * * * * * * *
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. It is fundamental that under the Workers' Compensation Act in order to receive any benefits, a claimant must establish that her disability was caused by an injury by accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6). Plaintiff carries the burden of proving each and every aspect of her claim by a preponderance of, or greater weight of, the evidence. A. Larson, The Law of Workmen's Compensation, § 80.33 (a) (1989). A critical element which the plaintiff must prove is a causal relationship between the injury and her employment. SeeBartlett v. Duke University. 284 N.C. 230, 200 S.E.2d 193 (1973) which stands for the proposition that no recovery is available for an injury which cannot fairly be traced to the employment as a contributing proximate cause.
2. It is equally clear that the evidence presented to establish causation must rise above the level of speculation.Gilmore v. Hope County Board of Education, 222 N.C. 358,23 S.E.2d 292 (1942).
3. Since plaintiff did not carry the burden of proof that she injured her left leg or foot when she fell on January 3, 1994, she is not entitled to benefits under the Workers' Compensation Act, including the cost of any treatment to her left foot. N.C. Gen. Stat. § 97-2(6).
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
AWARD
1. Plaintiff is not entitled to Workers' Compensation benefits because of or medical costs for the treatment of any injury to her left leg or left foot since her condition with respect to these did not result from an injury by accident arising out of her employment.
2. Each side shall pay its own costs.
 S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________ COY M. VANCE COMMISSIONER
S/ _________________ LAURA K. MAVRETIC COMMISSIONER