Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS with minor modifications the Opinion and Award of the Deputy Commissioner as follows:
***********
 RULING ON DEFENDANT'S MOTION TO STRIKE
On February 5, 1999, the Full Commission received defendants' Motion to Strike the exhibits "A" and "B" which plaintiff submitted with her brief to the Full Commission December 4, 1998, because (1) Exhibit B was in existence and was in the actual possession of plaintiff's counsel at the time of the initial hearing before the deputy commissioner and was not introduced into evidence at that time, and (2) Exhibit A, an additional medical record (3/3/98), was not submitted within the 150 days allowed by the deputy commissioner for such submissions prior to closing the record. For good cause shown by defendants,
IT IS ORDERED BY THE FULL COMMISSION that defendants' Motion to Strike exhibits "A" and "B" which plaintiff submitted with her brief to the Full Commission December 4, 1998, is ALLOWED.
***********
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties in an approved pre-trial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. That all the parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. That at the time of the alleged accidents the parties were and still remain subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At the time of the alleged accidents, an employment relationship existed between plaintiff and defendant-employer.
3. The carrier on the risk is Royal Insurance Company.
4. That plaintiff's average weekly wage as determined pursuant to an I.C. Form 22, stipulated into evidence, is $314.41 per week, with a corresponding compensation rate of $209.60 per week.
***********
The issue on appeal is whether the Deputy Commissioner correctly determined that plaintiff failed to prove that she sustained a compensable injury by accident or developed a compensable occupational disease as a result of her employment with defendant-employer?
***********
Based upon the competent evidence of record herein, the Full Commission adopts the findings of fact of the deputy commissioner with minor modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 45 years old (DOB: 05/22/51), and had finished the seventh grade. Plaintiff had work experience as a sewer, assembly line worker, edger at a mirror factory, washer at a mirror factory, and owner, operator and cashier at a service station. Prior to her employment with Golden Needles, plaintiff was involved in at least two automobile accidents, several workers' compensation claims and was assaulted by a former spouse. As a result of these events, plaintiff had suffered a number of injuries, including to her neck, prior to the events of May, 1995. Plaintiff had also received medical treatment for a number of other pre-existing conditions, including numbness in her upper and lower extremities, and depression.
2. On October 7, 1993, plaintiff began working as a creeler at defendant-employer Golden Needles Knitting Company, Inc. Her job duties included placing spools of yarn in a buggy, transporting the yarn to knitting machines, placing the spools of yarn on the machines and monitoring the machines.
3. After a few months of working as a creeler, plaintiff began to develop pain and numbness in her arms and hands. She was thereafter transferred to a position as a knitter for defendant-employer, which primarily involved monitoring machines to make sure they were running properly, making periodic inspection of gloves, and cleaning her work station with an air hose. After being transferred to the position of a knitter, plaintiff's symptoms of hand and arm pain and numbness dissipated until April and May, 1995. Plaintiff received no treatment for these symptoms and did not miss any time from work until June 2, 1995, when she was prescribed medication and taken out of work for two days by her doctors.
4. Plaintiff alleges that on or around May 10, 1995, she was getting out from under a machine at work and hit the back of her neck on an iron bar and that a few weeks later, on May 23, 1995, she once again backed out from under a machine at work and bumped her neck. Plaintiff also claims that a short time thereafter on May 23, 1995 while sitting on a plastic tub, it flipped backwards, causing her to fall off the tub onto the floor on her buttocks and back, causing her to hit her neck on another tub, and that she reported all of these accidents to her supervisor, Tom Adams.
5. Tom Adams, plaintiff's supervisor, recalled that plaintiff reported on an occasion earlier than May 23, 1995 that she had bumped her head on a machine at work on which occasion "she said it hurts right now but I think it will be okay." Plaintiff indicated that she did not need or desire medical treatment and continued working thereafter. Mr. Adams stated that plaintiff reported no other incident of bumping her head or neck or falling off a tub on or about May 23, 1995, but that at some point after May 23, 1995, plaintiff reported that her hands were numb, but that she made no mention of a neck injury or of neck pain and did not relate her symptoms to any alleged accident or accidents. Mr. Adams suggested to plaintiff that she have a doctor examine her numbness in her hands.
6. Jodie Walstrom, plaintiff's co-worker, stated that on May 23, 1995, she was working in the area where plaintiff allegedly fell off the tub, but that she did not witness the accident itself. She saw plaintiff sitting on the floor on her buttocks after plaintiff had allegedly fallen and plaintiff told her at the time that she was not injured and laughed about what had happened. Based upon the greater weight of the evidence, plaintiff did fall off the tub, but she did not hit her neck on another tub.
7. Plaintiff continued to work her normal job duties without receiving any medical treatment until June 2, 1995, when she presented to the Wilkes Regional Medical Center Emergency Department complaining of pain in both arms. Plaintiff claimed that she reported all three accidents to the emergency room attendants and also reported her neck pain. However, the emergency department records for June 2, 1995, provide a history given by plaintiff of hand and forearm pain for the previous two years which became worse two months following an incident where plaintiff fell down, striking the back of her neck "several months ago". There is no indication in this report that this fall occurred at work. A cervical x-ray was performed at that time. The report of the cervical x-ray noted the following: "There are some mild degenerative changes seen in the cervical spine and some disc space narrowing present at the C3-4 and C4-5 levels. Small posterior osteophytes are present. In oblique views, there is a very mild degree of neural foraminal compromise on the right at the C3-4 level and on the left at the C3-4 and C4-5 levels." Plaintiff was diagnosed with possible tendinitis or carpal tunnel syndrome. The date of the incident reported in the emergency department records differs from the dates provided by plaintiff at the hearing. Plaintiff's hearing testimony regarding her statements to the emergency room physicians is not accepted as credible.
8. Plaintiff also testified at the hearing that she received treatment from various physicians in the months after the alleged accidents, including Drs. Leonard A. Baugham, David Seales, Howard James Jones, Craig Bennett, and Jerry F. Watson. Plaintiff claimed that she reported all three work accidents to each of these physicians and that she reported neck pain to each physician. This testimony was contradicted by the medical records of these physicians as well as the testimony of Drs. Seales, Jones and Watson. The medical records and testimony of the treating physicians in the months after the alleged accidents confirm that plaintiff did not report any neck pain, did not relate her complaints of hand and arm pain to any work accident, and did not provide a history of any work accident. Plaintiff failed to provide an acceptable explanation for the absence of a history of neck pain or of any accidents in these treating physicians' records. It is further found that the medical care providers did not have any basis for inaccurately reporting plaintiff's history or complaints and that the medical records and testimony of the treating physicians, and in particular Drs. Baugham, Seales, Jones, Bennett and Watson, are credible.
9. In June, July, August and September 1995, plaintiff was seen by various treating physicians, including Drs. Leonard A. Baugham, a general practitioner; David Martin Seales, a neurologist; Howard James Jones, an internal and occupational medicine physician; Craig R. Bennett, an orthopedist; and Jerry F. Watson, a general surgeon who plaintiff chose without any involvement of defendant-employer. The objective tests performed by these physicians to determine whether plaintiff had a herniated cervical disk or cervical neuropathy were all essentially normal. The testimony of Dr. Jones, Dr. Seales and Dr. Watson and the treating physicians' medical records in the months immediately after the alleged accidents fail to disclose any evidence that plaintiff reported any neck pain to these physicians or that she related her complaints of hand and arm pain to any work-related accident.
10. Drs. Baugham, Seales, Jones, Bennett and Watson treated plaintiff conservatively for complaints of hand and arm pain and numbness from June 1995 through September 1995. These physicians, however, had varying diagnoses, including possible carpal tunnel syndrome, possible tendinitis, and arm pain of unknown etiology. Based upon the history plaintiff provided to these physicians, these complaints were not related to any injury by accident. Several doctors also noted that plaintiff exaggerated her symptoms and may have been influenced by secondary gain.
11. Plaintiff's treating physicians through September 1995 released plaintiff to return to work within certain restrictions. Defendant-employer provided plaintiff with employment within all restrictions set forth by the physicians. As of September 10, 1995, plaintiff's restrictions from Dr. Watson were to continue working with no use of the air hose. Defendant-employer met these restrictions. Nevertheless, plaintiff voluntarily left her employment with defendant-employer on September 10, 1995. Plaintiff thereafter inaccurately reported to Dr. Watson that defendant-employer failed to provide modified work for her. It is found that defendant-employer provided plaintiff with suitable employment, which plaintiff refused. It is further found that had plaintiff not refused suitable employment with defendant-employer, defendant-employer would have continued to make a position available for plaintiff. Therefore, plaintiff has failed to prove that she was disabled after September 10, 1995.
12. In November 1995, plaintiff was diagnosed with herniated disks at C5/6 and C6/7 as well as bony bars at C3/4 and C4/5. Plaintiff was treated conservatively at the Neurology Clinic at Bowman Gray School of Medicine, at the Statesville Medical Group and by Dr. Watson.
13. In February 1997, approximately 22 months after the alleged accidents, plaintiff came under the care of Dr. Douglas Pritchard, an anesthesiologist. Dr. Pritchard examined plaintiff and diagnosed neck pain with radiculitis, possibly secondary to degenerative disk disease and degenerative arthritis. Plaintiff provided Dr. Pritchard with a history that she suffered an accident at work and that she suffered significant neck pain immediately after the May 1995 incident. Based upon this inaccurate history, Dr. Pritchard gave the opinion that an event in May of 1995 may have aggravated a pre-existing arthritic condition in plaintiff's cervical region. Dr. Pritchard agreed that if plaintiff did not suffer from neck pain at the time of any alleged accident, his opinion on causation may be affected. Dr. Pritchard further noted that the physicians who treated plaintiff near the time of any alleged incident may be in a better position to give an opinion on causation. Because Dr. Pritchard's opinions were based largely upon the inaccurate history given by plaintiff and his treatment of plaintiff began almost two years after her alleged injuries, greater weight is given to the opinions of Drs. Jones, Watson and Seales. According to Drs. Jones, Watson and Seales, plaintiff did not have a herniated cervical disk. It is therefore found that plaintiff has failed to present competent, credible medical evidence that her herniated cervical disk and symptoms or disability from which she suffered are causally related to an injury by accident arising out of and in the course of her employment.
14. Although plaintiff's treating physicians released her to return to work with certain limitations, plaintiff has made no attempt to return to Golden Needles or to find other employment since September 10, 1995. Plaintiff's refusal to seek employment is unjustified and given her age, education, work history and restrictions, it would not have been futile for plaintiff to conduct a job search.
15. Plaintiff sustained an accident arising out of and in the course of her employment on May 23, 1995 when she fell to the floor while sitting on a plastic tub, landing on her buttocks; however, she did not suffer any injury from this accident. Therefore, plaintiff has failed to present competent, credible evidence that she suffered any injury by accident and further has failed to causally relate her neck condition, and other physical complaints, to her employment. Plaintiff's testimony that she hit the back of her neck on an iron bar on a machine on May 10, 1995 and again on May 23, 1995 is not accepted as credible.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS O F LAW
1. In order to receive benefits under the Workers' Compensation Act, plaintiff has the burden of proving an injury by accident arising out of and in the course of employment. Based upon the greater weight of the credible evidence, plaintiff had an accident arising out of and in the course of her employment on May 23, 1995 when she sat on a plastic tub and fell backwards onto the floor. However, plaintiff was not injured as a result of this accident. Plaintiff's claim that she was injured by bumping her neck on a machine on May 10, 1995 and again on May 23, 1995 is not credible. Therefore, her claim for benefits under an injury by accident theory is denied. N.C. Gen. Stat. §97-2(6). Adams v. AVX Corp., 349 N.C. 676, 509 S.E.2d 411
(1998).
2. In order to receive benefits for an occupational disease, plaintiff has the burden of proving that she suffers from a disease which is characteristic of and peculiar to a particular trade, occupation or employment and that such disease is not an ordinary disease of life which the general public is equally exposed. Plaintiff must also prove that there is a causal connection between a disease and her employment. Booker v.Duke University Medical Center, 297 N.C. 458, 256 S.E.2d 189
(1979). Plaintiff has failed to present competent evidence that her hand, arm, neck and other complaints constitute a disease which is characteristic of and peculiar to her occupation or employment. Plaintiff has also failed to prove that any disease from which she suffers is not an ordinary disease of life to which the general public is easily exposed. Finally, plaintiff has failed to present competent evidence that any alleged disease from which she suffers is related to her employment. Plaintiff has failed to satisfy her burden of proving a compensable occupational disease and her claim for benefits under this theory must be denied.
3. Plaintiff has the burden of proving by a preponderance of the evidence that there is a causal relationship between her injury and her employment and the evidence on this issue must rise above the level of speculation. Bartlett v. DukeUniversity, 284 N.C. 230, 200 S.E.2d 193 (1973). In order to satisfy this burden, plaintiff must present medical evidence based upon a reasonable degree of medical certainty showing a proximate causal relationship between the injury and employment.Click v. Pilot Freight Carriers, 300 N.C. 164,265 S.E.2d 389 (1980). In this case, the testimony and medical records from the treating physicians who saw plaintiff in the first months after her onset of symptoms in June 1995, are given the greater weight of the evidence. According to these records, and the testimony of Dr. Jones, Dr. Seales and Dr. Watson, plaintiff did not associate any of her complaints with any work accident. These physicians further did not find that plaintiff had a herniated cervical disk. The opinion of Dr. Pritchard that an event in May of 1995 may have exacerbated plaintiff's pre-existing cervical arthritis is not given any weight since it was based upon an inaccurate history and since Dr. Pritchard did not treat plaintiff until nearly two years after the onset of symptoms. Plaintiff has therefore failed to present competent evidence to satisfy her burden of proving a causal connection between her injury or injuries and her employment.
4. Plaintiff also has the burden of proving disability in a denied workers' compensation case. Kennedy v. Duke UniversityMedical Center, 101 N.C. App. 24, 398 S.E.2d 677 (1990). In this case, plaintiff seeks disability benefits after September 10, 1995, the date she voluntarily left employment with defendant-employer. In order to receive such benefits, plaintiff must prove that she was incapable after her injury of earning the same wages she earned before her injury in the same employment; that she was incapable after her injury of earning the same wages in some other employment; and that her incapacity to earn wages was caused by the injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff has failed to satisfy this burden. Defendant-employer provided plaintiff with suitable employment within her restrictions, but plaintiff refused to accept such employment and instead voluntarily quit her position without justification on September 10, 1995. Furthermore, plaintiff has failed to prove that she was disabled from any other employment after September 10, 1995.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits and medical expenses must, under the law, be and is hereby DENIED.
2. Each side shall pay its own costs.
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_____________ LAURA K. MAVRETIC COMMISSIONER
jcb