The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of the accident, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. At the time of the accident, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant is a qualified self-insured.
4. The employees average weekly wage at the time of the accident was $481. 20 with a corresponding compensation rate of $320.80 per week.
5. Plaintiff last worked for defendant on January 28, 1997.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 63 years old, had an eighth grade education, could read and write, and had work experience in sewing and manufacturing. In May 1981, plaintiff began working for defendant-employer.
2. On April 15, 1995, while stepping up into a forklift, plaintiffs foot slipped, causing her to strike the lower part of her right leg. Plaintiff was treated by the on-site nurse with an ice pack and continued to work.
3. Following the accident, plaintiffs leg became discolored from approximately three inches below her knee to her ankle. She was treated at Nash General Hospital Emergency Care Center on April 21, 1995 and was diagnosed with a contusion and given a bandage and medication. Plaintiff was placed on light duty for three days, which was provided by defendant-employer. Thereafter, plaintiff returned to her normal job duties as a fork lift operator and worked in her normal capacity for nearly two years through the time of her retirement January 29, 1997.
4. At the hearing before the Deputy Commissioner, plaintiff claimed that during the two years she continued to work for defendant-employer after the accident, she suffered from constant pain and sensitivity in her right leg and knee. Plaintiff also claimed at the hearing that she repeatedly reported knee pain and problems to her treating physicians, Dr. Robert G. Jones, Dr. DEmpaire, and Dr. J. Lawrence Frank.
5. Contrary to plaintiffs testimony at the hearing before the Deputy Commissioner, the medical records and testimony of Dr. Jones do not support plaintiffs contention that she repeatedly told the physicians of pain and difficulty with her right knee. Dr. Jones, an orthopedic surgeon, saw plaintiff on six occasions from May 5, 1995 through March 21, 1997. During this timeframe, plaintiff never reported any pain or difficulty in her right knee. Dr. Jones examinations revealed no objective findings of any knee problem and he diagnosed a soft tissue injury of the shin. Dr. Jones recommended that plaintiff continue her normal work duties and advised plaintiff that the soft tissue injury would resolve with conservative treatment over time. In Dr. Jones opinion, based upon his two years of treatment of plaintiff, the April 15, 1995 accident did not cause any problem in plaintiffs knee nor aggravate a pre-existing condition in plaintiffs knee. Dr. Jones opinion that plaintiff did not suffer a torn medial meniscus, or any other knee injury, as a result of the April 15, 1995 accident is supported by the physicians testimony that plaintiff registered no subjective complaints of knee pain and all objective findings were normal. In light of the fact that Dr. Jones treated plaintiff shortly after the April 15, 1995 accident and continued to treat her for two years, his opinion is accepted as competent, credible and convincing.
6. Throughout treatment, Dr. Jones did not impose any work restrictions on plaintiff, nor did he recommend that plaintiff retire from her job. Additionally, plaintiff saw Dr. Alberto DEmpaire, another specialist, on September 6, 1995. Again, contrary to plaintiffs testimony at the hearing before the Deputy Commissioner, plaintiff did not report any pain or difficulty with her knee to Dr. DEmpaire. Dr. DEmpaire agreed with Dr. Jones that plaintiff was capable of performing her normal job duties.
7. Plaintiff testified at the hearing before the Deputy Commissioner that on January 29, 1997, she retired from work with defendant-employer due to sensitivity in her leg and pain in her knee. This testimony was not accepted as credible and convincing by the Deputy Commissioner. The Full Commission declines to overturn the Deputy Commissioners credibility determination and therefore finds plaintiffs testimony as to her reasons for retiring not credible. Plaintiff continued to work her normal job duties from the date of the accident through January 28, 1997. Furthermore, plaintiff retired almost immediately after she reached age 62, the allowed retirement age. During her employment, plaintiff never requested any assistance performing her duties as a forklift driver, she never asked to be transferred, nor did she ask to be placed on light duty. As noted, plaintiffs treating physicians, Dr. Jones and Dr. DEmpaire, agreed that plaintiff was capable of working her full job duties. The Commission finds that the plaintiffs retirement was not necessitated by nor due to any injury she sustained on April 15, 1995. The Commission further finds that as of the date of her retirement, and continuing thereafter, plaintiff was capable of earning the same wages she had earned in the same or other employment.
8. After voluntarily retiring from her employment with defendant-employer on January 29, 1997, plaintiff did not return to any physician until March 1997 when she saw Dr. Jones. At that time, she had a full range of motion of her knee, no effusion and some tenderness in the tibia. Dr. Jones continued his recommendation of conservative treatment and imposed no work restrictions on plaintiff. Again, plaintiffs contention that she was unable to work as of March 1997 is refuted by the testimony of Dr. Jones and is not accepted as credible and convincing. Dr. Jones also found no permanent functional impairment as a result of the April 15, 1995 accident.
9. On June 17, 1997, for the first time plaintiff saw Dr. J. Lawrence Frank, a general orthopedist, upon referral by her attorney. Contrary to plaintiffs testimony at the hearing before the Deputy Commissioner, Dr. Frank noted that plaintiff did not report any pain or difficulty with her right knee. Dr. Frank found no objective indications of any knee problem and, just as Dr. Jones had done, diagnosed a soft tissue injury of the shin. Dr. Frank did not impose any work restrictions and testified that the plaintiff would have been capable of performing her job as a forklift operator. Dr. Frank assessed a 5% permanent functional impairment rating to the foot and released plaintiff from his care. Dr. Frank testified in his deposition that if he had been asked whether, in his opinion, plaintiff had a torn meniscus after he examined her on June 17, 1997, he would have responded "no. As to the 5% rating imposed by Dr. Frank on June 17, 1997, the Commission gives more weight to Dr. Jones testimony that plaintiff suffered no permanent functional impairment on the grounds that Dr. Jones saw plaintiff shortly after the April 15, 1995 accident and treated plaintiff over a lengthy two-year period of time.
10. In late August 1997, at the request of her attorney, plaintiff contacted Dr. Frank and asked that an MRI be scheduled. Notably, an MRI had not been recommended by Dr. Jones nor by Dr. Frank after his June 17, 1997 examination of plaintiff. Based upon plaintiffs request, an MRI was completed on August 25, 1997, revealing a small tear of the posterior horn of the medial meniscus. Dr. Jones testified that based upon plaintiffs subjective complaints and objective findings, there was no sign that this tear was present during the two years he treated her following the accident. In Dr. Jones opinion, a tear of the medial meniscus such as discovered in plaintiffs knee in September 1997 almost exclusively would not occur from a blow to the knee such as described by plaintiff and that, in light of plaintiffs age, the tear of the medial meniscus was likely a result of degenerative wear and tear. Dr. Jones opinions regarding the cause of the medial meniscus tear discovered in September 1997 are accepted as credible and convincing. Dr. Frank rendered an opinion that from examining the meniscal tear, there was no way for him to tell when it occurred. Dr. Frank acknowledged that it was possible the tear came from everyday activities or degeneration. Although Dr. Frank rendered an opinion that the torn meniscus was caused by or aggravated by the April 15, 1995 accident, the Commission gives greater weight to the opinion of Dr. Jones. Dr. Frank did not examine plaintiff until two years and three months after the alleged accident and therefore his opinions as to the effects of the April 15, 1995 accident are less competent than those of Dr. Jones who treated plaintiff in the weeks and months immediately following the accident.
11. Although plaintiff registered no complaints about her knee at the time the torn meniscus was discovered in August 1997, Dr. Frank nevertheless recommended arthroscopic surgery. The surgery was performed on October 6, 1997 and plaintiff recovered well. Dr. Frank testified that had she been working, plaintiff would have been unable to perform her job as a forklift driver only for a brief period of time from October 6, 1997 through December 16, 1997. As of December 16, 1997, Dr. Frank found that plaintiff was at maximum medical improvement and that she could have returned to her work as a forklift operator. Plaintiff, however, elected to remain retired and did not seek employment either with defendant-employer or any other employer.
12. Although plaintiff suffered an injury by accident to her lower right leg on April 15, 1995, other than medical expenses, there were no compensable consequences of such accident. Plaintiff missed no time from work as a result of the soft tissue injury to her leg and no work restrictions were imposed due to the soft tissue injury. Plaintiff also suffered no permanent functional impairment as a result of the soft tissue injury. Plaintiffs decision to retire in January 1997 was voluntary and, as of the time of her retirement, plaintiff did not suffer any loss of wage-earning capacity due to the injury by accident to her right lower extremity of April 15, 1995. The torn meniscus and right knee condition discovered in August 1997, well after plaintiffs retirement, are not related to the April 15, 1995 accident.
***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On April 15, 1995, plaintiff sustained an injury by accident to her lower right leg arising out of and in the course of her employment. N.C. Gen. Stat. 97-2(6). Plaintiff missed no time from work after April 15, 1995, as a result of the compensable soft tissue injury. Any presumption of disability to which plaintiff was entitled ended when she returned to work earning the same wages in the same employment.
2. Plaintiff has not proven by the greater weight of the evidence that she suffered any loss of wage-earning capacity as a result of the April 15, 1995 accident. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). Defendant rebutted any presumption of disability by presenting uncontradicted medical evidence that plaintiff was fully capable of working her normal job duties without restrictions, coupled with the fact that plaintiff performed her normal job duties for nearly two years after the accident.
3. Plaintiff had the burden of proving that her knee condition and any disability as a result thereof were caused by an injury by accident. N.C. Gen. Stat. 97-2(6). Plaintiff has failed to satisfy her burden of presenting credible, convincing evidence that her knee condition discovered in August 1997 is related to the April 15, 1995 accident.
4. Plaintiff also has the burden of proving a causal relationship between an alleged injury and her employment, and the evidence presented by plaintiff must rise above the level of speculation.Bartlett v. Duke University, 284 N.C. 230, 200 S.E.2d 193 (1973). The torn meniscus discovered in August 1997 is not causally related to the April 15, 1995 accident.
5. Plaintiff is entitled to have defendant pay for any medical treatment arising from the April 15, 1995 injury by accident to her right shin to the extent that it tends to effect a cure, give relief or lessen her disability. The treatment rendered by Dr. Frank after June 17, 1997, was not causally related to the compensable injury and therefore is not compensable.
***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Defendant shall pay for any future medical expenses that may be incurred by the plaintiff as a result of the April 15, 1995 soft tissue injury to plaintiffs right lower leg to the extent that such expenses and treatment are reasonably necessary to effect a cure, give relief or lessen the plaintiffs disability.
2. Plaintiffs claim for additional workers compensation benefits arising from the April 15, 1995 injury by accident must be and the same are hereby DENIED.
3. Each side shall bear its own costs.
This the ___ day of May 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER
LKM/bjp